# STATE v. SIMMONS.

Municipal Court, Ravenna.

No. 25096.    Decided March 3, 1960.

*Robert Kent,* City Prosecutor, for the State.
Defendant *in propria persona.*

2

For further history see *Omnibus Index* in bound volume.

FRANCE, J. Defendant herein was charged with operating a motor vehicle in the Village of Aurora in this county on February 1, 1960, during the period of suspension imposed by the Common Pleas Court of Cuyahoga County under favor of Section 4507.40, Revised Code, the "point system" provision. Warrant was issued and returned on February 12, 1960, at which time the defendant was arraigned and pleaded not guilty.

At time of arraignment defendant offered an apparently valid and unsuspended driver's license to support his claim that, if in fact his license had been suspended, he had no notice thereof. At the same session of court he pleaded guilty to a charge of speeding in violation of Section 4511.21, Revised Code, and the court, noting from the notations of his license from courts of record alone that defendant had lost more than 12 "points" in the past two years, promptly suspended his license and driving rights for one year under Section 4507.34, Revised Code—and confiscated the license. Any commentary below on the effect of notice, so far as this particular defendant and *his future* driving rights is concerned is therefore strictly academic, since he can scarcely now be under any misapprehension as to his right to drive.

Trial on the charge of driving under suspension was continued to March 2, as required by Section 2937.08, Revised Code, the State not consenting to immediate trial, notwithstanding desire of defendant to go to trial forthwith.

At trial the evidence was virtually undisputed. Showing was made that the record of "points" required by Section 4511.40, Revised Code, was certified by the Registrar of Motor Vehicles to the Cuyahoga County Common Pleas Court, being the county of defendant's residence; that the case was docketed and a time assigned for hearing; that the clerk placed notification of filing of application to suspend driver's license, required by law, together with notification of time, place and date of hearing, in a sealed envelope, registered, directed to defendant at his admitted place of residence; that the envelope, unopened, was returned to the Clerk's office by postal authorities,

stamped "unclaimed" but with a pencilled notation on its face "notified (date obscured)." Thereafter, on August 11, 1959, in normal course, the case was called, defendant did not appear, the court approved service, found defendant an habitual traffic violator, and ordered his license suspended for a period of six months, the action being evidenced by journal entry regularly filed. As to whether or not further notice of the court's action was sent or attempted to be sent to defendant, as required by Section 4507.40, Revised Code, no evidence was before the court.

Defendant contended that at no time did he receive notice of the pendency of the action, that he not only received no registered letter notifying him of the filing of the action, or requiring him to surrender license, but that he was not notified by postal authorities that a registered letter was held by them, as implied by the pencilled notation on the envelope.

The principal question encountered is whether or not the Court of Common Pleas, or any other court, can effectively deprive a defendant of his driving privilege without actual notice to him, and opportunity to be heard. Notice of pendency and opportunity to be heard are so commonly understood as the essential elements of procedural due process under Article I, Section 1, of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution that elaborate citation on this point would seem unnecessary. See 11 O. Jur. (2d), CONSTITUTIONAL LAW, Sections 715, et seq., and in particular cases cited Section 720, at page 66.

The state claims, in this regard, that since a driver's license, like a liquor license, is not a property right, the requirements of procedural due process do not apply to a proceeding to suspend it. Assuming this to be true, we are not concerned with defendant's property. If Section 4507.40, Revised Code, were merely a provision for eliminating the driving privilege, without more, such an argument would have merit. Unfortunately the last sentence of this melange of provisions of the section contains a penal provision, which is precisely the reason for the instant case's being before the court. Thus the same section of the law not only purports, by one reading, to provide for the removal of the operating privilege without effective notice, it makes continued exercise of the privilege without notice of its removal, and in reliance on the possession of an attested document (the driver's license) a criminal offense,

punishable by imprisonment. This is not merely the deprivation of property; it is the deprivation of personal freedom—a far more serious thing.

The state also contends that proof of actual notice to defendant is not necessary to procedural due process, but only a procedure in which there is a *reasonable probability* that notice be received. *Hess* v. *Pawloski*, 274 U. S., 352; *Hendershot* v. *Ferkel*, 144 Ohio St., 112; *Volmer* v. *Hocl*, 87 Ohio App., 199. These cases concern the constitutional validity of similar notices under the nonresident service of process statute, Section 2703.20, Revised Code.

The distinction might well be made that the cited cases relate only to civil judgments and the protection of property rights, whereas the notice and section in question relate to the far more important matter of human liberty which requires more elaborate safeguards. Apart from this distinction, however, Sections 2703.20, Revised Code, and similar provisions in the civil judgment field are subject to elaborate safeguards in the event a defendant, not notified of pendency of action, has default judgment taken against him. He may move, under Sections 2325.01 or 2325.02, Revised Code, to vacate the judgment against him and have opportunity to defend the action in court. Strangely, while the legislative draftsman of Section 4507.40, Revised Code, attempted to put almost everything else into the 22 paragraph, 1350 word statutory "shotgun" section, he neglected to provide for any vacation, modification or reopening of the judgment rendered under it.

To the extent that the language of Section 4507.40, Revised Code, authorizes deprivation of the driving privilege and renders the act of driving on an otherwise valid license criminal, without first requiring actual notice of the proceedings to be given to the defendant, this court would be compelled to find the section in question unconstitutional as violating Article I, Section 1, of the Ohio Constitution and the 14th Amendment to the United States Constitution.

However, if there are two constructions of a statute possible, one of which renders it constitutional and the other unconstitutional, the court is required to adopt the construction insuring constitutionality. In this regard the rather peculiar (and certainly muddled) language of the notice provision of Section 4507.40, Revised Code, invites close scrutiny. The relevant portion provides:

". . . . the Clerk of the Court of Common Pleas in which such application is filed shall notify the person against whom such application is filed, by registered mail to his last known address, that such application has been filed and shall inform such person of the date, place and time for hearing on said application. . . ."

At first blush the quoted provision would seem to enjoin a single duty on the clerk: To prepare a notice which would: (1) notify defendant of the filing of the application in question and (2) inform him of the date, place and time of hearing on it; and to then mail the notice, registered, to defendant at the correct address, without worry as to delivery or return of the notice undelivered. This is the interpretation obviously made of his duties by the Clerk in Cuyahoga County (and it might be added, in Portage County and probably in every other county of the state). It would seem fairly logical, and probably this is what a typical legislator contemplated by the use of the language.

But this is *not* what the quoted language and sentence structure says. The clerk is to do two things: (1) *Notify* defendant that the application is filed *and* (2) *inform* him of the hearing date, place and time. The adverbial phrase "by registered mail to his last known address," both by its position in the sentence and by the familiar rules of statutory construction, modifies only the first of the two verbs used in the sentence, the word "Notify"; it has no application or relationship to the second word "Inform." It is left to the imagination and resourcefulness of the clerk how the defendant is to be informed. Yet the language is imperative; defendant *shall* be informed.

Common sense would appear to dictate that if a registered letter containing the subject matter of both the notification and the information is actually delivered to and receipt acknowledged on a return card by the addressee, he is both *notified and informed*. If however, the letter is undelivered (and *a fortiori* if it is returned to the sender undelivered) by quirk of the law the defendant has been *notified*, but by no quirk of law, reason or construction of English grammar can he possibly be considered to be informed. What the clerk then does to discharge the mandatory duty of imparting information is more or less up to the clerk. Conceivably he may take the letter, put on his hat and by car, taxi, bus or bicycle seek out the defendant personally and give him the information. He may

6

presumably send his deputy to do so. He may even, and with some logic, issue the notice or a copy of it to be served by the sheriff, in the same manner as a citation to show cause. However, INFORM the defendant he must; until he does so, no jurisdiction over the person of the violator is acquired, and no adjudication can be made by the court; any purported adjudication is a nullity and subject to collateral attack.

Since it is clear from the evidence in this case that the defendant was constructively notified of pendency, but never informed of date, place and time of hearing, as required by law, it follows that he was not adjudicated an habitual traffic violator, and not lawfully deprived of his driving privilege.

Defendant is acquitted.