THE STATE OF OHIO *v.* FOREMAN.

(No. 77 TRD 5477—Decided February 2, 1978.)

Dayton Municipal Court, Traffic Division.

*Mr. Steven R. Milby,* for plaintiff.
*Mr. David K. Wehner,* for defendant.

Merz, J. The undisputed facts indicate that defendant was stopped at approximately Grand and Salem in Dayton, on May 25, 1977, at about 11:35 p. m. by Officer John Huber of the Dayton Police Department because he had a headlight out. A records check revealed that the Bureau of Motor Vehicles had attempted, at least, to suspend defendant's license to drive, under R. C. 4509.17. He was arrested, booked, and charged with driving while under suspension, in violation of R. C. 4509.76, which provides:

"No person whose license or registration or non-resident's operating privilege has been suspended or revoked under sections 4509.01 to 4509.78, inclusive, of the Revised Code shall, during such suspension or revocation, drive any motor vehicle upon any highway or knowingly permit any motor vehicle owned by such person to be operated by another upon any highway, except as permitted under such sections."

Defendant admits. that he was driving. In order to prevail under R. C. 4509.75, the State must show that his license was validly suspended at the time.

R. C. 4509.13 requires that when the registrar of motor vehicles has determined the amount of security to be deposited under the Financial Responsibility Law, he "* * * shall give written notice to. such person of the amount of security required to be deposited by him. Such notice shall inform the person of his right to a hearing if written request is made within thirty days of the mailing of the notice."

R. C. 4509.13 does not speak to the manner of giving notice or the contents of that notice. R. C. 4509.04 makes any act of the registrar under the Financial Responsibility Law subject to the provisions of the Administrative Procedure Act, R. C. 119.01 to 119.13, inclusive. Apparently, the registrar interprets the latter statute as governing at least the method of giving notice in a R. C. 4509.17 suspension case, for in the instant case he caused written notice

to be sent to defendant at 305 Oxford Avenue by registered mail, return receipt requested, as required by R. C. 119.07 (State's Exhibit 1). When the registered letter was returned marked "Moved, Left No Address," the registrar caused notice of the suspension, together with the right to request a hearing, to be published three consecutive weeks in the Daily Court Reporter (State's Exhibit 1), a procedure required by R. C. 119.07 when registered mail is returned because of inability to deliver. Why the General Assembly would expect anyone to learn of a license suspension from the Daily Court Reporter when he or she did not receive a registered letter is a complete mystery, but it is clear that publication in the Daily Court Reporter complies with the literal terms of R. C. 119.07 (see R. C. 7.12 and 2701.09 for definition of a newspaper of general circulation).

After publishing in the Daily Court Reporter, however, the registrar did not comply with the balance of the notice requirements of R. C. 119.07. As to the manner of service, the statute provides that:

"A copy of the newspaper, with the first publication of said notice marked, shall be mailed to the party at such address [the last known place of residence] and the notice shall be deemed received as of the date of the last publication."

State's Exhibit 1 contains no evidence that this provision was ever complied with. There is an affidavit of publication, but there is no evidence to show mailing of a copy of the Court Reporter to defendant's last known address. Absent this evidence, there is no basis for the statutory presumption of receipt.

Apart from the manner of service, the contents of the notice are also inadequate under R. C. 119.07, which provides as to content:

"Such notice * * * shall include the charges or other reasons for such proposed action, the law or rule directly involved, and a statement informing the party that he is entitled to a hearing if he requests it within thirty days of the time of mailing the notice. The notice shall also in-

form the party that at the hearing he may appear in person, by his attorney, or by such other representative as is permitted to practice before the agency, or may present his position, arguments, or contentions in writing and that at the hearing he may present evidence and examine witnesses appearing for and against him * * *."

The notice given by the registrar in this case complies with the first sentence quoted above, but appears to ignore the second sentence. It gives the defendant no notice of his right to be represented, to be present, to cross-examine witnesses, and so forth. On this ground also, the notice is inadequate.

Failure to give the required notice either as to content or as to manner of service would invalidate the registrar's action in suspending the license, thus preventing defendant's conviction for violation of R. C. 4509.76. Without a valid suspension, there can hardly be a conviction for driving while under suspension, *Fell* v. *Bureau of Motor Vehicles* (1972), 30 Ohio App. 2d 151; *State* v. *Simmons* (Mun. Ct. 1960), 85 Ohio Law Abs. 1; *State* v. *Taylor*, No. 76 TRD 18236 (Dayton Mun. Ct., 1977, Wolff, J., unreported).

It may be contended that R. C. 119.07 does not apply to suspension under R. C. 4509.17. If that be the case, it is difficult to understand why the bureau has adopted so much of the R. C. 119. 07 procedure. Assuming, *arguendo*, that R. C. 119.07 does not apply, the question is what sort of notice would meet the requirements of R. C. 4509.13. The statute provides that the registrar shall "give written notice." If the registrar elected to do that by mail, he could rely on the usual presumption of receipt of regularly mailed items, except in cases like the present one where the presumption is defeated by evidence showing the notice was not delivered.

To escape that problem, the state must rely on some theory of constructive notice. Constructive notice is not adequate in a suspension case. In dealing with the analogous notice of suspension language of R. C. 4511.191, the Court of Appeals for Cuyahoga County held:

"To notify means to give actual notice. The licensee must receive the information. Actal notice is a condition precedent to the suspension taking effect. If the registrar chooses to mail the notice of the proposed suspension there must be an effective mailing, and mail notice is not effective until received. When a statute requires notice of a proceeding but is silent concerning its form or manner of service, actual service alone will satisfy such requirement. *Moore* v. *Given, supra* (39 Ohio St. 661 [1884])." *Fell* v. *Bureau of Motor Vehicles* (1972), 30 Ohio App. 2d 151, 160.

The case for actual notice in a security suspension case is stronger than that presented by an implied consent suspension. In the latter case, a person will have been stopped for suspicion of driving while under the influence and will have been advised by the arresting officer of the consequences of refusal to take the breathalyzer test, including license suspension. In the security deposit situation, the driver knows only that he or she has been in an accident; knowledge that that may result in a license suspension would depend on comprehension of the complexities of the Financial Responsibility Law.

The Court of Appeals for Hamilton County has rejected the actual notice requirement of *Fell* in another implied consent case, *Ryan* v. *Andrews* (1976), 50 Ohio App. 2d 72. The *Ryan* court emphasized the ways in which a recalcitrant driver could thwart the purposes of the suspension statutes by moving or not accepting mail from the bureau. However, it was clear in the *Ryan* case that the driver there had *in fact* engaged in such dilatory conduct. No such proof is made in the instant case. The Court of Appeals there concluded that an actual notice requirement would be costly and time consuming for the bureau (*Id.* at 76). No proof was offered of the amount of such cost or extra time. The Court of Appeals there also failed to mention that the result in *Fell* had been reached by statutory interpretation, leaving the way open for the General Assembly to specify a form of constructive notice if it desires to avoid the cost and time involved with actual notice. Of course, constructive notice in some forms would raise con-

stitutional questions under the Supreme Court's decision in *Bell* v. *Burson* (1971), 402 U. S. 535, 29 L. Ed. 2d 90. It will be time enough to deal with those questions when and if the legislature elects a form of constructive notice.

Finally, it is important to appreciate the context for imposing the actual notice requirement. Even if some sort of constructive notice were sufficient for the validity of the license suspension itself, the question would remain whether constructive notice would support a criminal conviction for driving under suspension. In *State* v. *Taylor, supra*, Judge Wolff of this court reached the conclusion, by way of statutory interpretation, that actual notice of suspension was necessary to support a conviction, regardless of the validity of the suspension itself. I believe his reasoning was sound. Although a theory of strict or negligence liability may be adequate for traffic offenses generally, it is not adequate where serious criminal sanctions may be imposed; R. C. 4509.99 permits six-months' confinement and a $500 fine for driving while under suspension which is a purely *malum prohibitum* offense. The act of driving is in itself innocent unless one knows one's license has been suspended. The arguments for a culpability requirement for criminal offenses need not be recited here (see Packer, *The Limits of the Criminal Sanction*), but they are convincing to me. I would require actual notice of suspension to uphold a conviction for driving while suspended even if a constitutional method of constructive notice to suspend the license were devised and implemented unless it could be shown that the failure of a defendant to receive actual notice was the result of his or her culpable conduct (as in the *Ryan* case). In the instant case it was proven to my satisfaction that defendant did not have actual notice that his license was suspended, through no fault of his own.

For the foregoing reasons, Defendant is found NOT GUILTY and ordered discharged.

*Defendant not guilty.*