The STATE of Ohio, Appellee,

v.

COOK, Appellant.

[Cite as *State v. Cook* (1991), 73 Ohio App.3d 80.]

Court of Appeals of Ohio,
Wood County.

No. WD–90–3.

Decided April 12, 1991.

*Martin L. Smith,* Prosecuting Attorney, and *Mark D. Tolles,* for appellee.

*Kathleen M. Culkowski,* for appellant.

*Per Curiam.*

This is an appeal from a December 12, 1989 judgment entry of the Bowling Green Municipal Court in which appellant, John T. Cook, was found guilty of the charge of driving under suspension and guilty of the charge of failing to drive within marked lanes but not guilty of the charge of driving under the influence, resulting in appellant receiving a sentence of probation for three years, fines totalling $350, and court costs. Two of the three counts, driving under the influence and driving under suspension, were tried to a jury. The remaining charge, failure to drive within marked lanes, was tried to the court. Appellant presents two assignments of error to support his contention that his conviction for driving under suspension must be overturned. The two assignments of error state:

"First Assignment of Error

"The lower court erred by convicting defendant-appellant of driving under an FRA suspension in violation of Ohio Revised Code Section 4507.02(B).

"A. The conviction of the defendant-appellant was against the manifest weight of the evidence inasmuch as the state failed to prove notice to the defendant of the suspension.

"B. The jury instruction on the notice requirement was erroneous and substantially prejudiced the defendant in his ability to present his defense.

"Second Assignment of Error

"The lower court erred in admitting state's Exhibit 1, Bureau of Motor Vehicles packet which was not properly authenticated, contained hearsay evidence, irrelevant evidence and prejudicial evidence thereby prejudicing defendant's right to a fair trial."

A brief review of the events which led to appellant being charged with the three counts previously stated is necessary to understand the contentions presented by appellant. Appellant testified at trial that on November 6, 1988, he was involved in an accident while driving his employer's car. Police officers were called to the scene and a report was made, but no citations were issued. Appellant testified that he was not aware of the requirement established by R.C. 4509.06 to file an accident report with the Bureau of Motor Vehicles ("BMV"). Consequently, appellant did not file a separate report with the BMV. A letter was sent by the BMV to appellant to inform him that if he failed to file a report and proof of financial responsibility, he would face a license suspension pursuant to R.C. 4509.09. The letter, dated March 29, 1989, was sent by certified mail. Appellant testified at trial, however, that he never received the certified letter nor did he receive any notice that there was a certified letter to be claimed. Appellant testified that the letter was

properly addressed to his current place of residence, but that he had been absent from that place of residence from February 17, 1989 to June 23, 1989 to receive military training. The record reflects that the certified letter was returned to the BMV. The record contains a document entitled "BUREAU OF MOTOR VEHICLES SAFETY RESPONSIBILITY DIVISION REQUEST FOR FIELD SERVICE" which indicates that notice was returned to the BMV marked "unknown." A copy of the envelope from the certified letter is included in the record but is not legible regarding the reason marked for the return of the letter. Because appellant failed to file the required report and proof of financial responsibility, appellant's driver's license was suspended effective April 28, 1989. Nearly five months later, on September 25, 1989, appellant was stopped for failing to drive within marked lines. The officer who conducted the stop noticed that appellant's eyes were bloodshot and glassy, that appellant's face was slightly flushed, and that appellant smelled moderately of alcohol. The officer conducted roadside sobriety tests, such as the nystagmus gaze test and coordination tests, before placing appellant under arrest for driving under the influence. Appellant was then transported to the Bowling Green Police Station where the arresting officer obtained a print-out sheet relating to appellant's driving record, which indicated that appellant's license was suspended for failure to file an accident report and failure to file a financial responsibility report. The officer then charged appellant with driving under suspension in addition to driving under the influence and failure to drive within marked lanes. The officer testified that appellant protested that he was not aware that his driver's license was suspended. Appellant also testified that he first learned of the suspension of his driver's license upon his arrest on September 25, 1989. He testified that he received the final notice from the BMV regarding the suspension of his license on the Tuesday following his arrest in September 1989. The final notice was sent by regular mail. Appellant testified that he complied with the requirements outlined in the final notice and completed all required forms within the week following his receipt of the notice.

As was previously stated, appellant was originally cited for a violation of R.C. 4507.02(B)(1) which states:

"No person, whose driver's or commercial driver's license or permit * * * has been suspended or revoked pursuant to Chapter 4509. of the Revised Code, shall operate any motor vehicle within this state, or knowingly permit any motor vehicle owned by him to be operated by another person in the state, during the period of the suspension or revocation, except as specifically authorized by Chapter 4509. of the Revised Code."

The record shows that appellant's license was suspended under R.C. Chapter 4509 pursuant to three different provisions. The first provision, R.C. 4509.06, states:

"The driver of any motor vehicle which is in any manner involved in a motor vehicle accident shall within thirty days forward a written report of the accident to the registrar of motor vehicles on a form prescribed by the registrar. The forwarding of the report by the owner of the motor vehicle involved in the accident is deemed compliance with this section by the driver. This section does not change or modify the duties of the driver or operator of a motor vehicle as set forth in section 4549.02 of the Revised Code."

The second provision, R.C. 4509.101(A)(3), states:

"A person to whom this state has issued a certificate of registration for a motor vehicle or a license to operate a motor vehicle or who is determined to have operated any motor vehicle or permitted the operation in this state of a motor vehicle owned by the person shall be required to verify the existence at the time of the traffic offense or accident of proof of financial responsibility covering the operation of the motor vehicle or the person's operation of the motor vehicle whenever * * * the person or a motor vehicle owned by the person is involved in a traffic accident that requires the filing of an accident report under section 4509.06 of the Revised Code."

A violation of either of the above-quoted provisions from R.C. Chapter 4509 can result in the suspension of the violator's license pursuant to R.C. 4509.09, which states:

"The registrar may suspend the license of any person who fails to report an accident, as provided in Sections 4509.01 to 4509.78, inclusive, of the Revised Code, until the report has been filed."

Once the suspension is in effect, R.C. 4507.02(B)(1) is applicable. The penalty for a violation of R.C. 4507.02(B)(1) is set forth in R.C. 4507.99(A), which states:

"Whoever violates division (B) or (D) of section 4507.02 of the Revised Code is guilty of driving under suspension or revocation or in violation of license restrictions, a misdemeanor of the first degree. * * * "

Neither appellee nor appellant disputes the existence of a procedural due process requirement of notice and opportunity to be heard relating to the suspension of a driver's license. See *Bell v. Burson* (1970), 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90, 96. What is disputed is whether the procedural due process requires actual notice to be delivered to the affected driver. Appellant argues that nothing less than actual notice will satisfy his due process rights. Appellee counters by citing several cases from Ohio

which establish the principle that the BMV does not have the burden of showing actual notice was received by the driver; rather, the BMV need only show that notice was sent to the driver's last known address in a manner reasonably calculated to result in notice being received. See, *e.g., Townsend v. Dollison* (1981), 66 Ohio St.2d 225, 227–228, 20 O.O.3d 220, 221–222, 421 N.E.2d 146, 147–148; *State v. Morrison* (1982), 2 Ohio App.3d 364, 366, 2 OBR 421, 423, 442 N.E.2d 114, 117.

Our research indicates that there is a diversity of opinion among the states regarding the question of what constitutes appropriate notice relating to the suspension of a driver's license. See Annotation, Sufficiency of Notice and Hearing Before Revocation or Suspension of Motor Vehicle Driver's License (1974), 60 A.L.R.3d 427, 430. The majority of states require notice and a hearing before a license is suspended, but do not require actual notice to be served. The minority of states require actual notice before a license can be suspended. See *State v. Hammond* (1971), 116 N.J.Super. 244, 249–251, 281 A.2d 819, 822.

A review of Ohio cases dealing with notice requirements for license suspensions shows that in some instances actual notice has been required in accordance with the minority view, and in other instances constructive notice has been deemed sufficient, in accordance with the majority view. None of the cases dealing with notice requirements for the suspension of a driver's license appears to be directly on point with the case at bar, since none of the cases stemmed from the suspension of a driver's license for failure to file an accident report with the BMV.

One of the earlier Ohio cases addressing the issue of notice required when a license is suspended for the accumulation of more than twelve points in two years has language which shows that the court concluded that actual notice must be given to meet constitutional due process rights. *State v. Simmons* (M.C.1960), 85 Ohio Law Abs. 1, 5, 172 N.E.2d 194, 196–197. The precedential value of *State v. Simmons* is limited, however, because the court noted that all its statements regarding notice requirements were dicta, since the driver's license had been suspended in proceedings subsequent to the proceedings on appeal. *Id.* at 2, 172 N.E.2d at 195. In addition, the suspension in question in *State v. Simmons* was the result of the accumulation of too many points on a driver's license, a distinction of some significance since the statutory sections pertaining to that type of suspension include specific directions to the registrar to send notice of the suspension of the driver. The statutes at issue in this case do not contain any similar provision.

A second Ohio court considering the suspension of a driver's license for failure to take a chemical test to determine whether the driver was operating

a vehicle under the influence of alcohol ruled that "actual notice is a condition precedent to the suspension taking effect." *Fell v. Bureau of Motor Vehicles* (1972), 30 Ohio App.2d 151, 160, 59 O.O.2d 269, 274, 283 N.E.2d 825, 832, certiorari denied (1974), 419 U.S. 1010, 95 S.Ct. 330, 42 L.Ed.2d 285. In *Fell*, the BMV filed a motion to dismiss the appeal on the basis that the appeal was filed more than twenty days after notice of suspension was sent to the driver. The court first noted that any proceedings brought under the implied consent statute were civil and administrative in nature. The court then focused on the specific provisions of the implied consent statute. Included in those provisions was a requirement that:

"When the registrar suspends the license he shall immediately notify the person in writing, at his last known address, and inform him that he may petition for a hearing * * *." *Id.* at 158, 59 O.O.2d at 273, 283 N.E.2d at 831.

The *Fell* court reached the same conclusion as the *State v. Simmons* court and ruled that notification meant actual notice.

A separate court of appeals reached a slightly different conclusion a few years later when considering whether actual notice was required before a suspension for failure to take a chemical test to determine whether the driver was operating a vehicle under the influence of alcohol became effective. *Ryan v. Andrews* (1976), 50 Ohio App.2d 72, 4 O.O.3d 49, 361 N.E.2d 1086. In *Ryan*, the BMV sent notification by certified letter to the driver that her license would be suspended for failure to comply with the chemical test. The certified letter was sent to the address listed on the refusal to take the chemical test form. The driver had moved to a new address following her arrest for DUI. She had not informed the BMV of her new address. The *Ryan* court stated:

"If actual notice were required here, plaintiff-appellant by moving and refusing to claim a certified mail letter would have been able to postpone her suspension by two months. A person who neglects to inform the Bureau of her new address or who fails to claim a certified mail letter will not be heard to complain later that she did not know of the suspension until after the twenty-day appeal time had lapsed." *Id.* at 77, 4 O.O.3d at 51, 361 N.E.2d at 1089.

In 1981, the Supreme Court of Ohio received a case on certification raising the question of what notice was appropriate for a suspension of a driver's license. *Townsend v. Dollison, supra.*

The *Townsend* court, in a *per curiam* opinion, ruled that a driver whose license was suspended after the accumulation of twelve points was not denied his due process of law when he did not receive actual notice. *Id.* at 227–228, 20 O.O.3d at 221–222, 421 N.E.2d at 147–148. The driver in *Townsend* had

not received notice of the suspension of his driver's license because the driver had failed to provide the BMV with his most recent address. The notice had been sent to the driver's last known address. The *Townsend* court quoted the provisions of R.C. 4507.40(K), which indicate that when a driver has accumulated twelve points on his driver's license within a two-year period, the registrar must mail notice to the driver's last known address that the driver's license will be suspended for six months. The *Townsend* court stated:

"The facts of this case demonstrate that the failure of the appellant to receive notice cannot be attributed to the Bureau of Motor Vehicles. It would appear from the record that the appellant failed to report his correct address to the bureau when he renewed his driver's license on September 10, 1977." *Id.* at 227, 20 O.O.3d at 222, 421 N.E.2d at 148.

At least three Ohio courts have ruled on notification issues following the Supreme Court decision in *Townsend*. The Franklin County Court of Appeals, when considering a challenge to a suspension imposed after an individual accumulated more than twelve points on his driver's license within a two-year period, ruled that:

"Proper notice for purposes of R.C. 4507.40 is that which is reasonably calculated to apprise plaintiff of proceedings pending against him. In this case, since defendant failed to send plaintiff notice to his 'last known address,' there was not proper notice. Thus, the twenty day period within which plaintiff has to request a hearing, pursuant to R.C. 4507.40(K), did not commence until he received actual notice." *Moran v. Dollison* (1981), 3 Ohio App.3d 121, 123, 3 OBR 137, 139, 444 N.E.2d 55, 58.

The Summit County Court of Appeals ruled that a suspension of a driver's license for failure to post a security deposit could be upheld when " * * * constructive notice reasonably calculated to apprise the licensee of the suspension * * * " was rendered. *State v. Morrison* (1982), 2 Ohio App.3d 364, 366, 2 OBR 421, 423, 442 N.E.2d 114, 118. The *Morrison* court also noted that:

" * * * [A] charge of driving under suspension is akin to a strict liability statute and requires no culpable mental state on the part of the defendant." *Id.* at 367, 2 OBR at 424, 442 N.E.2d at 119.

The third court to rule on notice provisions following the *Townsend* decision was the Hamilton County Municipal Court. *Daugherty v. McCullion* (1985), 22 Ohio Misc.2d 1, 22 OBR 59, 488 N.E.2d 509. The suspension in question in that case resulted from an accumulation of twelve points within a two-year period. The driver whose license was suspended had provided his correct new address to a police officer when he was issued a citation for speeding. However, the BMV failed to update its records and sent the notice to the driver's old address. The certified letter was returned unclaimed. The court

held that " * * * the notice sent to petitioner herein was not sent to his 'last known address' and therefore the twenty-day period for filing a petition did not commence until he received *actual notice*." (Emphasis *sic*.) *Id.* at 4, 22 OBR at 62, 448 N.E.2d at 512.

We have carefully reviewed all of the Ohio cases we could locate and find that all are distinguishable because none dealt with the exact situation which exists in this case. In each of the cases previously discussed, the situations addressed by the courts were governed by specific state statutes which directed the Registrar of the BMV to serve notice of a suspension by certified mail at the last known address of the driver. As we have already shown in our discussion of these cases, the most recent cases have ruled that notification requirements are met if the BMV does send the notice by certified mail to the last known address as directed by statute. Constructive notice is adequate unless the BMV is at fault for not sending the certified letter to the correct last known address, in which case actual notice is required. Appellee argued, and the lower court ruled, that the same reasoning applies in this case, rendering appellant guilty of driving under suspension because the certified letter was sent to appellant's correct last known address, making constructive notice adequate. We do not agree. We have carefully reviewed R.C. Chapter 4509, in general, and R.C. 4509.06 and 4509.101, in particular, and have concluded that the registrar must do more than send notice by certified mail to the correct last known address to complete service of notice in this situation.

R.C. 4509.09 is drafted to permit the registrar to suspend a driver's license, without a prior hearing, when the driver fails to file an accident report. R.C. 4509.101 requires notice to be sent by certified mail of a suspension for a failure to comply with the Financial Responsibility Act when: (1) a court has entered judgment against a driver in a traffic case and the driver failed to give proof to the court of financial responsibility, and (2) the driver *has filed* an accident report as required by R.C. 4509.06 and an accompanying financial responsibility report as required by R.C. 4509.101(A)(3) and the registrar has made a determination that there are insufficient assets provided in violation of the Financial Responsibility Act. Neither suspension provided for in R.C. 4509.101 existed in this case as no judgment had been entered regarding the accident appellant was involved in during November 1988 and no report or financial responsibility statement had been filed. Thus, the notice provisions listed in R.C. 4509.101 are not applicable to this case.

R.C. 4509.101 does contain the following language:

"Chapter 119. of the Revised Code applies to this section only to the extent that any provision in that chapter is not clearly inconsistent with this section." R.C. 4509.101(G).

We therefore turn to R.C. Chapter 119 to see if any notice provisions are applicable in this situation. R.C. 119.062 specifically exempts the BMV Registrar from holding any hearings with regard to certain types of license suspensions, but none of these suspensions is at issue in this case. R.C. 119.07 states in pertinent part:

" * * * When a statute specifically permits the suspension of a license without a prior hearing, notice of the agency's order shall be sent to the party by registered mail, return receipt requested, not later than the business day next succeeding such order. Such notice shall state the reasons for the agency's action, cite the law or rule directly involved, and state that the party will be afforded a hearing if he requests it within thirty days of the time of mailing the notice * * *.

"When any notice required by sections 119.01 to 119.13, inclusive, of the Revised Code, to be sent by registered mail, is returned because of inability to deliver, the notice required shall be published once a week for three consecutive weeks in a newspaper of general circulation in the county where the last known place of residence or business of the party is located. A copy of the newspaper, with the first publication of said notice marked, shall be mailed to the party at such address and *the notice shall be deemed received as of the date of the last publication.*" (Emphasis added.)

■ Appellant's first assignment of error challenges appellant's conviction for driving under suspension on the basis that the suspension is invalid due to a lack of proper notice. A collateral attack to a civil proceeding resulting in a suspended license is proper in a criminal proceeding for driving under suspension when the collateral attack is based on an improper notice claim. See *State v. Morrison, supra,* 2 Ohio App.3d at 366, 2 OBR at 423, 442 N.E.2d at 117. Because the record does not contain anything to show that the requirements of R.C. 119.07 were complied with, we agree with appellant that proper notice was not given regarding the suspension. We also agree with appellant that the following instruction given to the jury was erroneous:

"If you find that the Bureau of Motor Vehicles mailed notice to Defendant [of the] suspension to the Defendant's last known address, then the notice requirement of the law has been met. The law does not require actual notice to the Defendant."

This instruction was erroneous because it did not include the full requirements for notice set forth in R.C. 119.07. Because there is not substantial

evidence supporting the elements of the crime for which appellant was convicted in the lower court, the lower court could not " * * * reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, at syllabus. Appellant's first assignment of error is well taken.

In his second assignment of error, appellant contends that he was denied a fair trial because the BMV report which was admitted into evidence was prejudicial hearsay evidence. In support of that contention, appellant argues that the BMV report was not a public record or report pursuant to Evid.R. 803(8) because there was no extrinsic evidence of authenticity associated with the report, and because the certification page was faulty in three ways: (1) the certification page was signed by someone without apparent authority; (2) the certification page lacks a discernible seal; and (3) there was no specific listing of exactly what documents were attached to be certified. In addition, appellant contends that the report was not admissible because it contained irrelevant information such as correspondence to and from Allstate Insurance Company regarding the accident which occurred in 1988, an accident not in issue at trial, and because it contained a report of a pretrial suspension of appellant's license for driving under the influence. While appellant's contentions that the report constitutes hearsay and contains irrelevant information may be correct, appellant's second assignment of error does not appear to be well taken because appellant has failed to specify any prejudicial effect the admission of the report had upon appellant. The arresting officer testified at trial that he had learned appellant's driver's license was suspended after reading a printout sheet from the BMV. The officer identified the printout sheet during his testimony. Therefore, an independent source existed to verify that appellant's driver's license was suspended at the time of his arrest for driving under the influence. The Supreme Court of Ohio has stated:

"Error in the admission of evidence in criminal proceedings is harmless if there is no reasonable possibility that the evidence may have contributed to the accused's conviction. In order to hold the error harmless, the court must be able to declare a belief that the error was harmless beyond a reasonable doubt." *State v. Bayless* (1976), 48 Ohio St.2d 73, 2 O.O.3d 249, 357 N.E.2d 1035, paragraph seven of the syllabus, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1155.

Since the remainder of the evidence complained of by appellant consists of a pretrial suspension of appellant's license for driving under the influence, a charge the jury rejected when it found appellant not guilty of driving under the influence, and of correspondence between Allstate Insurance Company

and the BMV relating to the insurance company's query about the existence of an accident report, a report appellant admitted at trial he never filed, this court is able to declare the belief that any error committed when the evidence was admitted was harmless beyond a reasonable doubt. Appellant's second assignment of error is not well taken.

Because appellant's first assignment of error is well taken, the judgment of the Bowling Green Municipal Court is reversed. Appellee is ordered to pay the court costs of this appeal.

*Judgment reversed.*

HANDWORK, P.J., GLASSER and MELVIN L. RESNICK, JJ., concur.