## WILLIAMS v SECRETARY OF STATE

1. AUTOMOBILES—MOTOR VEHICLE ACCIDENT CLAIMS FUND—OWNER'S LIABILITY—TITULAR OWNER.

A co-owner of an automobile is liable to any person for damage caused by the operation of that car by the other co-owner, even though the co-owners, husband and wife, are separated and the co-owner held responsible is an owner in name only (MCLA 257.401).

2. AUTOMOBILES—MOTOR VEHICLE ACCIDENT CLAIMS FUND—DRIVER'S LICENSES—SUSPENSION.

Suspension of a co-owner's driver's license for failure to repay the Motor Vehicle Accident Claims Fund for amounts it paid for an accident caused by the other co-owners of an automobile cannot be challenged in court until the amount has been repaid or an arrangement has been made to pay the amount in installments.

3. NOTICE—UNCLAIMED LETTER—AUTOMOBILES.

A rebuttable presumption exists that the addressee of a Motor Vehicle Claims Fund notice, stating that she was liable to the Fund, did not receive the actual notice where the letter was returned "unclaimed"; additional steps must be taken to afford an addressee actual notice, such as registered mail or personal service, where the presumption of nondelivery has arisen.

4. AUTOMOBILES—MOTOR VEHICLE ACCIDENT CLAIMS FUND—DRIVER'S LICENSES—SUSPENSION.

The scope of judicial review of a suspension of a driver's license for failure to pay the Motor Vehicle Claims Fund extends to a determination whether adequate administrative due process was provided as to the notice before suspension.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4] 7 Am Jur 2d, Automobile Insurance §§ 135–138.

Rights and liabilities under "uninsured motorists" coverage, 79 ALR2d 1252.

[3] 7 Am Jur 2d, Automobiles and Highway Traffic § 122 *et seq.*

Appeal from Wayne, Edward F. Bell, J. Submitted Division 1 November 1, 1971, at Detroit. (Docket No. 10067.) Decided April 24, 1972.

Complaint by Annie R. Williams against the Secretary of State for restoration of a driver's license. Judgment for plaintiff. Defendant appeals. Remanded with instructions.

*Geraldine Wunsch,* Wayne County Neighborhood Legal Services, for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Joseph B. Bilitzke* and *Karl K. Carlsen,* Assistants Attorney General, for defendant.

Before: LESINSKI, C. J., and V. J. BRENNAN and O'HARA,* JJ.

O'HARA, J. This is an appeal of right from an order of the circuit court restoring a driver's license to one of the joint titled owners of a motor vehicle. The license was suspended by the Secretary of State in his capacity as Director of the Motor Vehicle Accident Claims Act.

With the volume of reported opinions from this Court ever on the increase and the consequential increased need of library space for, and reading time of, our reports, we depart from the traditional format of opinions which set out verbatim statutes and constitutional provisions under consideration. Rather, we will set forth the issues as succinctly as possible as they evolve from the relevant facts. We will simply footnote the citation and then refer to the substance of the concerned statutes and constitutional provisions, all of which

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

are easily accessible to the trial bench and bar if the need for pinpointing their language arises in precedential application.

In short, plaintiff, Annie Williams, and her husband bought an automobile. The record in the trial court is truncated as to details of the purchase and registration, but accepting plaintiff's version, without the minutiae of proof, it appears that the husband bought the car and registered the title in his own and his wife's name so that in the event of the death of either the title would remain in the survivor. We note the lack of necessity of doing so, because of the simplified procedure now available to accomplish the same end without the exposure of liability as a registered owner. MCLA 257.236; MSA 9.1936.

In any event, while the title was thus registered, the husband and wife separated and were living apart. The automobile was uninsured. The husband, while operating it, became involved in a collision. A claim was asserted against him. When the lack of liability insurance was learned, the claim was made against the Motor Vehicle Accident Claims Fund, hereinafter referred to as the Fund, known sometimes as the "uninsured motorist fund". When such a claim is made, the director of the Fund makes an investigation and determines *administratively* whether it should be paid. If payment appears to be in order, before making payment the director sends the following notice to the registered owner or owners in case of plural ownership registration.

"You have a right to dispute your liability and a right to a judicial determination of your liability. If you wish to dispute liability you must do so within 20 days from the date of this notice as shown below. Your dispute must be communicated either in writing or in

person to the Director, Motor Vehicle Accident Claims Fund, 935 N. Washington, Lansing, Michigan. If you fail to respond to this notice within 20 days thereof disputing your liability, the Motor Vehicle Accident Claims Fund may proceed to make payment to the applicant. Your driver's license and vehicle registration will thereupon be suspended until you have repaid the Fund in full or have entered into an agreement with the Fund to repay in installments the full amount involved."

The Fund claims the notice in this case was sent to the last known address of both registered owners as the statute requires. MCLA 257.1106; MSA 9.2806. The statute requires proof of mailing only by certified mail by the director. MCLA 257.1106, *supra.*

This claim is expressly disputed by plaintiff. She alleges in her verified petition for reinstatement that "well before" November 31 (30) she filed a change of address with the Secretary of State through the 13th precinct station of the Detroit Police Department. This she asserts was done in connection with a change of address on her chauffeur's license. She avers further that the notice of impending suspension was sent to her former address (2634 Superior) rather than to her newly registered address (1976 Albertus). Neither on oral argument before the trial judge (no testimony was taken) nor in any pleading of record with us does the Fund dispute the foregoing claim.

The envelope addressed to plaintiff was returned to the director marked "unclaimed". The record is silent as to whether her husband actually received his. In any event, neither responded to the notice. The director determined the claim should be paid. It was in the amount of $3,000. Thereafter, in accordance with the act, the operator's license of *both* owners was suspended. By this time, plaintiff,

Mrs. Williams, had begun to support herself by driving a taxi. The suspension denied her her sole means of support. She started her action for judicial review of the suspension. It came on for hearing.

Her counsel claimed first that she was not really an "owner" in the sense that would render her liable for damage caused by the vehicle of which she was a registered joint owner. The Fund responded that it was of no moment that she denied any right of control over the vehicle, and was an owner in name only. The judge observed that it was a pretty tough statute. Both counsel agreed that it was, but the Fund replied this was a legislative matter and the wisdom or harshness of which was none of its business. She was a registered owner and, as such, was liable. The Fund had not been reimbursed and hence the court could do nothing about restoring her license until the Fund was repaid or satisfactory arrangements for time payments were made and carried out.

As to the issue of ownership, both plaintiff and defendant, in their stated questions, assert the trial judge did not answer the question of whether hers was an ownership which would render her liable. We must disagree. The able trial judge made it abundantly clear (except for a direct statement) that he regarded the claimed insufficiency of ownership as of no legal merit. We quote the record, page 8. True, the first excerpt was a somewhat oblique holding, but the court's view is very clear.

*"Plaintiff's counsel:* I think the petitioner's petition [position] would be that if this matter was litigated in court, she would have a perfectly valid defense to any liability * * *.

*"The Court:* I wouldn't litigate it, if I were you."

If this wry observation is not sufficient, hear the court in the concluding sentence of his decisional paragraph.

*"The Court:* Just so the record can reflect what I am doing, the court's adopting the language of Michigan Statute 9.2023,[1] and it's the court's opinion that that section of the statute, that statute not having been expressly excluded by the Motor Vehicle Accident Claims Act, will permit the court to grant the relief that she wishes, and for that reason, the court's going to give her some relief. *I don't subscribe to what you* [plaintiff's counsel] *said about her not being an owner, however."* (Emphasis supplied.)

And, if this is not enough, we quote from page 9 of the transcript:

*"The Court:* Let me say this to counsel. I am not persuaded by your argument that she was not in fact an owner within the meaning of the statute. As a matter of fact, all the evidence points to the contrary. She had a title, which is also in her name, and a registration in her name, and she drove the car, you say, with his consent. He drove the car, you say, without her consent. As far as I am concerned, there is implied consent for both parties driving the automobile."

It is very clear to us that the court did pass on the ownership issue adversely to plaintiff's claim, and we agree. There is little point in listing again cohort citations construing the liability of registered owners for the negligent operation of motor vehicles registered in their names, whether individually or jointly. So as to the first question stated by both parties: "Is plaintiff subject to liability as co-owner of an automobile operated by her

---

[1] MCLA 257.323; MSA 9.2023.

husband based on the provisions of MCLA 257.401; MSA 9.2101". We hold the trial judge did answer the question in the affirmative, and correctly.

We now consider the second question. Both parties state it identically: "Is the suspension of driver's license pursuant to the provisions of the Motor Vehicle Accident Claims Act subject to judicial review." The trial judge answered "Yes" and relied upon the language that "any person * * * whose license is revoked or suspended by the Secretary of State * * * shall have a right to file a petition for a hearing * * * in a circuit court. Such court is further authorized to confirm, modify or set aside such order of suspension, revocation or denial of such license." MCLA § 257.323, *supra.*

As opposed to the foregoing is the provision of the Motor Vehicle Accident Claims Act which provides:

"(5) Where payment is made under this section, the operator's or chauffeur's license and owner's registration or registrations of the persons to whom the notice was forwarded under this section shall be forthwith suspended by the secretary and shall not be reinstated until such person or persons have:

"(a) Repaid in full to the fund the amount paid out; or

"(b) Commenced installment repayments in accordance with an agreement made with the secretary, and filed proof of financial responsibility until the amount paid out in settlement of the claim by the motor vehicle accident claims fund has been repaid in full.

"(6) Where a person who has commenced repayment of an amount paid out of the fund is in default in any payment for a period of 10 days, or fails to maintain proof of financial responsibility as required by this act, the secretary shall forthwith suspend the operator's or chauffeur's license and vehicle registration or registrations of the person." MCLA 257.1106, *supra.*

There is no conflict as we read the two statutes. While a conflict seems apparent, it is not real. Of course, *literally* speaking, there is judicial review under the first cited statute, but that review is limited. As a condition precedent to judicial relief, the petitioner must satisfy the conditions precedent above quoted from the Motor Vehicle Claims Act. He must show that he has either repaid the Fund the amount it paid out, or made a satisfactory installment arrangement for payments. We think the review of any suspension or revocation written into the appeal statute is to guard against arbitrary, capricious or unreasonable refusal to restore a suspended or revoked license when there is no *legal* barrier to the exercise of the judicial authority. Our jurisprudence is replete with analogous situations where granting judicial relief is dependent upon prior fulfilled conditions precedent.

We so hold for two reasons: First, the statute granting judicial review of the suspension of operator's license was enacted long before the remedial legislation embodied in the Motor Vehicle Claims Act. Its subsequent enactment modified the prior statute.[2]

Second, to permit the interposition of judicial review of suspension or revocation simply in the discretion of the court for "hardship" or other reasons appealing to the notion of "equitable" relief, is to vitiate completely the manifest legislative intent to deny motor vehicle operating privileges to those who have not satisfied the damages occasioned by a motor vehicle for which a legal obligation has been imposed upon the owner. Highway carnage is a matter of the gravest con-

[2] We note specifically that the effect, if any, of 1963 Const, art 6, § 28 is not before us. It was neither raised below nor briefed. Sufficient unto the case, the briefed issues thereof.

cern to society. While it may be argued that the concerned statute is an after-the-fact remedy, if remedy it be, we decline to interdict legislative attempts at least to mitigate the financial impact of injury and pecuniary loss growing out of automobile accidents.

We are not unmindful of recent Federal decisions relating to the requirements of administrative due process prior to revocation or suspension of driving privileges. We note them particularly with regard to the adequacy of the manner of affording notice to those subject to the statutory penalties. See, *Bell v Burson,* 402 US 535; 91 S Ct 1586; 29 L Ed 2d 90 (1971); *Pratt v Kaye,* 40 USLW 2197 (USDC, D Colo, Sept. 21, 1971).

Hence, there is a question in this case which though not specifically raised in express terms in the court below nor in this Court we must pass upon.

While it is not our policy to raise such questions ourselves, in this case, we cannot avoid it. Until it is settled judicially, we think the statute is infirm as here applied.

We noted earlier that the envelope containing the notice to the plaintiff owner that her driver's license was in peril of suspension was returned to the director marked "unclaimed". We hold here that this raised a presumption, albeit a rebuttable one, that the addressee did not receive *actual* notice of the imminence of the suspension. This is of particular materiality in this case where plaintiff affirmatively claims the notice was not sent to her last known address as required by statute, but rather to a previous one and that she did in fact notify the office of the Secretary of State of the change.

We further hold that it became the obligation of

the director to take some additional step to afford the owner notice. We suggest that several alternatives are open: the notice can be resent by registered mail, return receipt requested and, of course, personal service is always proper. Certainly it is also the burden of the director to inform himself of the last known address which is of record.

We would not be understood to mean that the Fund must constitute itself a missing persons bureau and locate the owner at the peril of totally vitiating the statute. We do mean the Fund must act affirmatively in some manner when the presumption of nondelivery, mentioned earlier, arises and be prepared to furnish proof of what was done.

As to the case at bar, we remand for further proceedings to determine whether the Fund did take any additional action so as to comport with the requirements of administrative due process as discussed herein. If it did not, we hold the administrative suspension of her license was improper.

If, however, the trial court finds the Fund did comport with administrative due process in conformity with our opinion here, we hereby set aside the order of the trial court and reinstate the order of suspension.

By our opinion, we reject the argument that the trial and appellate benches are totally without discretion and may only affirm judicially that which the Fund has already done administratively. Rather, we hold the scope of judicial review does extend to a determination of whether there was or was not compliance with adequate administrative due process as to notice before suspension.

No costs, a public question.

All concurred.