RONALD P. LARKIN, Indiv. and as Class Representative on Behalf of All Others Similarly Situated, Plaintiff-Appellant, v. NEIL F. HARTIGAN, as Attorney General, *et al.*, Defendants-Appellees.

Fourth District No. 4—93—0052

Argued August 18, 1993.—Opinion filed September 16, 1993.

Mary Lee Leahy (argued) and Cheryl Redfield Jansen, both of Leahy Law Offices, of Springfield, and John Gwinn, of Tepper & Gwinn, P.C., of Urbana, for appellant.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and John P. Schmidt, Assistant Attorney General (argued), of Chicago, of counsel), for appellees.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff Ronald Larkin appeals from the dismissal (Ill. Rev. Stat. 1991, ch. 110, par. 2—615) of his declaratory judgment action by a Champaign County circuit court judge. Plaintiff sought injunctive re-

lief against defendants, then Attorney General of the State of Illinois, Neil F. Hartigan, and James Edgar in his official capacity as Secretary of State (Secretary). He argues sections 7—604 through 7—606 of the Illinois Vehicle Code (Code) are unconstitutional because these provisions violate his right, and the right of others similarly situated, to avoid compulsory self-incrimination, and because the provisions deny adequate due process protections. (Ill. Rev. Stat. 1991, ch. 95½, pars. 7—604 through 7—606.) We disagree and affirm.

## I. Facts

Plaintiff received a letter from the Secretary dated January 12, 1990. The letter was in reference to verification of whether plaintiff's 1990 Honda motor vehicle was insured. It stated plaintiff's vehicle had been selected for participation in a random sampling program to determine if the selected registered motorists had liability insurance for their vehicles.

The letter informed plaintiff he had to respond to the questions on the attached postcard and return the card to the Secretary's office within 30 days. The attached postcard inquired whether plaintiff's vehicle was covered by liability insurance on the verification date of January 12, 1990. It also asked the name of plaintiff's insurance company, his policy number, and the effective and expiration dates of his policy. The information was to be provided as it appeared on plaintiff's insurance card.

The letter also informed plaintiff the mandatory insurance division of the Secretary's office would suspend his license plates if he failed to return the form within 30 days, returned the form with incomplete or erroneous information, or indicated on the form that he had no insurance coverage.

Plaintiff had the required liability insurance for his vehicle as of January 1990 as evidenced by his insurance card, a copy of which was attached to his complaint. However, he did not return the required information to the Secretary's office. Instead he sent a letter to the mandatory insurance division of that office on January 13, 1990. The letter indicated plaintiff had contradictory evidence about whether he was insured at the relevant time because his insurance agent had lost a computer transmission. The letter also stated the United States Constitution protected him from being forced to incriminate himself by responding to the verification form.

Plaintiff's complaint also alleged the Secretary's office sent him a notice of license plate suspension which stated his vehicle registration would be suspended effective June 5, 1990, because he failed to re-

turn the requested verification form. The letter also indicated if plaintiff had the proper insurance on January 12 he could have his record corrected by submitting proof of this insurance. The proof could be plaintiff's insurance card, a certificate of insurance, a policy declarations page, an insurance binder, or written proof from an insurance representative. If plaintiff was not insured on January 12 he could not have his suspension lifted until August 5, 1990, after he paid a $50 fee and submitted proof he had obtained insurance as of the reinstatement date. In February 1990, plaintiff was notified by the Secretary that his vehicle registration was suspended from June 5 to August 5, 1990, for failure to return the verification form. Plaintiff did not seek administrative review of this suspension. See Ill. Rev. Stat. 1991, ch. 95½, par. 2—118(e).

On approximately August 6 plaintiff sent the Secretary a check for $50. His license plate suspension was lifted and his check was returned to him.

On January 7, 1991, months after the reinstatement of his vehicle registration, plaintiff filed a lawsuit. In his complaint, plaintiff contended the Illinois Code provision authorizing the Secretary to randomly ask registered motorists about liability insurance violated the recipients' right against self-incrimination. He also contended the absence of a provision providing motorists a hearing before or after their license plate was suspended violated their right to due process. Plaintiff sought certification as a class, with the class consisting of all individuals who had vehicle liability insurance in compliance with the Act but whose license plates were suspended for failure to submit proof of their coverage to the Secretary's office.

Plaintiff sought a declaratory judgment that sections 7—604 through 7—606 of the Code violated the fifth and fourteenth amendments to the United States Constitution (U.S. Const., amends. V, XIV). He sought an injunction forbidding defendants from enforcing those provisions of the Code, damages, and attorney fees. Defendants filed a motion to dismiss the complaint.

In October 1992 the trial judge dismissed the complaint. (Ill. Rev. Stat. 1991, ch. 110, par. 2—615.) The judge concluded the Secretary did not request information on the verification form which would tend to incriminate a motorist. He also concluded plaintiff was not within the class of persons alleged to have a constitutional claim. Plaintiff had failed to allege sufficient facts to state a claim that his right to avoid compulsory self-incrimination had been violated.

The judge also concluded plaintiff did not state a claim he was deprived of property without due process of law because the existing

procedures allowed individuals to submit documentary proof either before or after a license plate suspension was effective and thereby avoid suspension or have it rescinded. These procedures were sufficient to ensure due process requirements. This appeal followed.

## II. Relevant Statutory Provisions

Section 7—604 of the Code authorizes the Secretary to select random samples of motor vehicle registrations to determine whether the vehicles are insured. Under subsection (c), the Secretary may send to owners of randomly selected motor vehicles requests for information about the vehicles and their liability insurance coverage. (Ill. Rev. Stat. 1991, ch. 95½, par. 7—604(c).) The information sought from the owners includes whether the vehicle was insured on the verification date indicated by the form. The Secretary may also require the owners to provide the name and address of their insurers, their insurance policy numbers, and the expiration dates of the policies.

Pursuant to section 7—604(d), within 30 days after the Secretary mails the verification request, the vehicle owner "shall furnish the requested information to the Secretary above the owner's signed affirmation that such information is true and correct." (Ill. Rev. Stat. 1991, ch. 95½, par. 7—604(d).) If the owner fails to respond to the request, or if the response indicates the vehicle was not covered by liability insurance on the verification date, he or she shall be deemed to have maintained registration of his or her motor vehicle in violation of section 7—601 of the Code. Ill. Rev. Stat. 1991, ch. 95½, par. 7—601.

Section 7—601(a) of the Code provides that from January 1, 1990, until December 31, 1993, no one shall operate, register, or maintain the registration of a motor vehicle designed for use on a public highway unless the vehicle is covered by liability insurance. Ill. Rev. Stat. 1991, ch. 95½, par. 7—601(a).

Under section 7—605 of the Code, when the Secretary concludes a vehicle owner has violated section 7—601 by registering or maintaining registration of a vehicle but not carrying liability insurance on the vehicle, the Secretary must notify the owner the vehicle registration will be suspended effective 45 days from the date of the section 7—605 notice unless the owner produces satisfactory proof of insurance on the verification.

The Secretary must suspend the registration of any vehicle which is determined to be in violation of section 7—601. If the violation is the vehicle owner's initial violation, the suspension may be lifted after two months upon payment of a $50 fee and proof of insurance. If the

violation is a second or subsequent violation, the suspension may be lifted after four months if the above conditions are met.

The Illinois Administrative Code provides a vehicle registration suspension will be cancelled or rescinded if the vehicle owner presents evidence of insurance in effect on the verification date. 50 Ill. Adm. Code §8010.40(f)(4) (1992).

## III. Analysis

Initially, we note the defendants against whom plaintiff filed this litigation no longer serve in the official capacities in which they served when he initiated this action. Therefore, the current Attorney General, Roland W. Burris, and the current Secretary, George Ryan, should have been substituted as defendants pursuant to section 2—1008(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1008(a)).

### A. Standing to Challenge Statutory Scheme on Self-Incrimination Grounds

Defendants contend the trial judge correctly concluded plaintiff lacked standing to assert a claim that being compelled to admit he had no vehicle liability insurance would violate his fifth amendment right against self-incrimination and the right of those similarly situated whom he sought to represent.

Plaintiff alleged he had the required insurance on the verification date; however, when he received the verification form he did not know whether he carried the requisite liability insurance. The proposed class of individuals plaintiff sought to represent were those who had their vehicle registration suspended although they had the requisite insurance on the verification date.

A court inquires into the constitutionality of a statute only to the extent necessary to the particular case before it. (*People v. Rogers* (1989), 133 Ill. 2d 1, 8, 549 N.E.2d 226, 229.) Where no facts demonstrate an unconstitutional application of a statute in the case which the court is reviewing, the statute cannot be challenged based on a hypothetical scenario. *People v. Wisslead* (1985), 108 Ill. 2d 389, 397, 484 N.E.2d 1081, 1084.

Moreover, a court will not consider objections to an allegedly unconstitutional feature if the complaining party is not in any way aggrieved by the complained-of feature of the statute. (*City of Chicago v. Lawrence* (1969), 42 Ill. 2d 461, 464, 248 N.E.2d 71, 73-74.) This principle applies where a party seeks declaratory relief (*Kluk v. Lang* (1988), 125 Ill. 2d 306, 314-15, 531 N.E.2d 790, 793), which can only

be granted "in cases of actual controversy" (Ill. Rev. Stat. 1991, ch. 110, par. 2—701).

The statutory provisions at issue could not have placed plaintiff or any members of the proposed class in jeopardy of self-incrimination because they had the liability insurance coverage required by the Code. Plaintiff alleged in his complaint that at all times relevant to this action he had the requisite insurance for his vehicle. Plaintiff failed to notify proper authorities about this fact before his license registration was suspended. As will be discussed in more detail, plaintiff was provided an additional 45 days from the time he received the section 7—605 notification his vehicle registration would be suspended and the date the suspension became effective. His claim that when he received the verification form he could not determine whether his vehicle was properly insured does not bolster his standing claim. Plaintiff owned the vehicle. There is nothing unconstitutional about requiring a vehicle owner to verify his insurance sufficiently meets all legal requirements. The alleged injury which he sustained, suspension of his vehicle registration for two months, was not caused by a constitutional deficiency in the complained-of provisions. It was instead plaintiff's failure to cooperate with and follow instructions of the Secretary and constitutional officer (Ill. Const. 1970, art. V, §16) in the exercise of his legislatively prescribed duties, which led to suspension of plaintiff's license plates.

The trial judge correctly ruled plaintiff, as an individual and as representative for the class he sought to represent, failed to allege facts which supported a violation of his right not to incriminate himself.

### B. *No Fifth Amendment Violation*
Even if plaintiff had properly established standing, he could not rely on his fifth amendment privilege against compulsory self-incrimination. This protection is implicated only when the government seeks to compel testimony which would subject the individual to criminal liability. An individual can be compelled to provide testimony against himself in a noncriminal investigation. *Garner v. United States* (1976), 424 U.S. 648, 655, 47 L. Ed. 2d 370, 378, 96 S. Ct. 1178, 1183 (information revealed in preparation and filing of an income tax return); *People v. Lucas* (1968), 41 Ill. 2d 370, 374, 243 N.E.2d 228, 231 (statute requiring driver involved in vehicular accident resulting in death or injuries to provide name, address, and vehicle registration to persons in other vehicle not violative of fifth amendment because possibility of self-incrimination is remote).

Moreover, the privilege against compulsory self-incrimination does not apply unless the complainant faces a real and substantial risk of incrimination rather than a remote risk. *California v. Byers* (1971), 402 U.S. 424, 428, 29 L. Ed. 2d 9, 17, 91 S. Ct. 1535, 1538.

Sections 7—604 through 7—606 of the Code do not violate the fifth amendment rights of those individuals who receive a vehicle insurance verification form and who do not have the required coverage. An admission on the form that the vehicle owner does not have liability insurance does not subject the owner to criminal penalties. The registration suspension which results under section 7—606 of the Code is not a criminal sanction. Rather, it is an administrative regulation designed to protect Illinois motorists and pedestrians by assuring there is a private source of funds to pay for deaths, injuries, or property damage resulting from vehicular accidents.

Plaintiff directs us to the recent ruling in *Austin v. United States* (1993), 509 U.S. ___, 125 L. Ed. 2d 488, 113 S. Ct. 2801, in which the Supreme Court concluded whether proceedings are civil or criminal in nature is not determinative of whether the eighth amendment right against excessive punishment (U.S. Const., amend. VIII) should apply to a particular case. The essential consideration is whether the action constituted punishment. In *Austin*, the Court concluded seizure of defendant's mobile home and store after defendant was found guilty of possession of cocaine in State court was subject to the limitations of the eighth amendment's excessive fines clause. *Austin*, 509 U.S. at ___, 125 L. Ed. 2d at 494-96, 113 S. Ct. at 2803-04.

Similarly, plaintiff contends we should conclude the fifth amendment protections against compulsory self-incrimination should apply in this case because the loss of the use of his vehicle constitutes punishment.

The *Austin* Court noted although the fifth amendment privilege against self-incrimination is textually limited to criminal cases, it may also apply in forfeiture proceedings, but only when the owner's culpability was relevant under the particular forfeiture statute or when the owner faced the possibility of subsequent criminal proceedings. *Austin*, 509 U.S. at ___ n.4, 125 L. Ed. 2d at 496 n.4, 113 S. Ct. at 2804 n.4, citing *United States v. United States Coin & Currency* (1971), 401 U.S. 715, 721-22, 28 L. Ed. 2d 434, 439, 91 S. Ct. 1041, 1045, *Boyd v. United States* (1886), 116 U.S. 616, 634, 29 L. Ed. 746, 752, 6 S. Ct. 524, 534, *United States v. Ward* (1980), 448 U.S. 242, 253-54, 65 L. Ed. 2d 742, 752-53, 100 S. Ct. 2636, 2644.

Plaintiff did not forfeit ownership of his vehicle. Although he could not lawfully drive the vehicle while the registration was sus-

pended, this governmental action is not as severe as forfeiture of a party's property. The facts of this case do not justify an expansion of the circumstances under which the fifth amendment privilege against self-incrimination should apply in a noncriminal proceeding.

Regulatory agencies may impose remedial civil sanctions when a statute delegates such authority. (*Helvering v. Mitchell* (1938), 303 U.S. 391, 399, 406, 82 L. Ed. 917, 921-22, 926, 58 S. Ct. 630, 633, 636; *Scott v. Association for Childbirth at Home, International* (1981), 88 Ill. 2d 279, 288, 430 N.E.2d 1012, 1017.) One form of civil sanction which is not considered a criminal penalty is the revocation of a privilege which was voluntarily granted. *Helvering*, 303 U.S. at 399, 82 L. Ed. at 922, 58 S. Ct. at 633.

In Illinois, the statutory suspension of driver's licenses of individuals arrested for driving under the influence of alcohol is considered an administrative function of the Secretary of State. This action is designed to protect Illinois motorists and pedestrians and is not viewed as punishment. *Koss v. Slater* (1987), 116 Ill. 2d 389, 395, 507 N.E.2d 826, 829.

Similarly, suspending a vehicle owner's registration when the owner does not carry liability insurance for his vehicle is an administrative penalty designed to protect travelers on Illinois highways from the prospect of being involved in an accident with an uninsured motorist which would diminish the prospects of the injured receiving compensation for injuries incurred.

Additional evidence the complained-of provisions impose civil and not criminal sanctions is that suspension is automatic pursuant to section 7—606, unlike criminal proceedings in which criminal intent is often required. (See *Rehg v. Illinois Department of Revenue* (1992), 152 Ill. 2d 504, 514-15, 605 N.E.2d 525, 530.) The legislature provided for automatic suspension without procedures which generally accompany criminal proceedings because section 7—606 was intended to be a civil and not a criminal sanction.

However, despite the legislative intent, if a sanction is excessive considering its purpose, it will be considered criminal in nature. (*Rehg*, 152 Ill. 2d at 513, 605 N.E.2d at 530.) An individual who does not have liability insurance on the verification date can have his registration suspended for two (first violation) or four months (second or subsequent violation) before registration will be reinstated upon payment of $50 ($100 for second or subsequent violation) and proof of liability insurance. Ill. Rev. Stat. 1991, ch. 95½, par. 7—606.

A two- or four-month suspension of vehicle registration is not such a drastic sanction that it should be viewed as criminal in nature.

A person's driving privileges can be suspended for three months to two years. (Ill. Rev. Stat. 1991, ch. 95½, par. 6—208.1(1).) The Illinois Supreme Court has concluded statutory summary suspensions are administrative and not criminal penalties in nature. *Koss,* 116 Ill. 2d at 395, 507 N.E.2d at 829.

The two- or four-month suspension of a vehicle owner's registration is more lenient than a two-year suspension of an individual's driver's license, which penalty has been viewed as civil in nature. The penalty at issue in this case is not criminal in nature or excessive.

Suspending the vehicle registration of a party who does not carry liability insurance is not punishment *per se.* It is simply a means to protect individuals who incur injuries from a vehicular accident. The trial judge's dismissal of plaintiff's self-incrimination claim was proper.

### C. *Due Process Protections*

#### 1. Opportunity to be Heard

Plaintiff initially argues the Code does not provide for adequate due process protections because an individual whose vehicle registration is suspended has no opportunity to be heard before the suspension is effective. The State directs us to section 2—118(a) of the Code as support for its claim plaintiff could have sought a presuspension hearing:

> "Upon the suspension, revocation or denial of the issuance of a license, permit, registration or certificate of title under this Code of any person the Secretary of State shall immediately notify such person in writing and upon his written request shall, within 20 days after receipt thereof, *** afford him an opportunity for a hearing as early as practical ***." (Ill. Rev. Stat. 1991, ch. 95½, par. 2—118(a).)

Plaintiff contends this provision should be interpreted as providing a hearing only after the revocation is effective. Therefore, he argues, no presuspension hearing is provided.

Subsection (b) of section 2—118 supports the conclusion subsection (a) provides for a hearing within 20 days after a party whose registration is suspended receives *notification* of the upcoming action against him. This provision states:

> "At any time after the suspension, revocation or denial of a license, permit, registration or certificate of title of any person as hereinbefore referred to, the Secretary of State, in his discretion and without the necessity of a request by such person,

may hold such a hearing, upon not less than 10 days' notice in writing ***." Ill. Rev. Stat. 1991, ch. 95½, par. 2—118(b).

Plaintiff received notification his vehicle registration was being suspended. The notice stated:

"You are hereby notified that the vehicle registration identified above is suspended for failure to comply with mandatory vehicle liability insurance laws *** beginning 12:01 a.m. on the effective date printed below.

Effective date of registration suspension—June 05, 1990."

Due process requires an individual threatened with deprivation of a protected liberty or property interest receive notice of the impending action and an opportunity to be heard. (*Campbell v. Cook County Sheriff's Merit Board* (1991), 215 Ill. App. 3d 868, 870, 576 N.E.2d 90, 92.) The Code provided these protections to plaintiff.

Section 7—605 of the Code provides the Secretary must send suspension notices 45 days before the date upon which the suspension is to become effective. (Ill. Rev. Stat. 1991, ch. 95½, par. 7—605.) The February 1990 notice informing plaintiff the suspension would be effective June 5 was received 45 days before the June 5 suspension date. Plaintiff was provided an additional 45 days to be heard on his view of why his vehicular registration should not be suspended based on his failure to document he carried liability insurance at the relevant time. We note section 2—118(e) of the Code provides for administrative review of suspension actions by the Secretary and plaintiff did not see fit to timely avail himself of this protection either.

His argument the Code denies due process protections by failing to provide a presuspension hearing fails. Plaintiff did not avail himself of the procedures outlined in the Code and those stated in the correspondence mailed to him by the Secretary. Moreover, additional procedures within the Code adequately ensure plaintiff due process protection.

## 2. Adequate Procedural Protections

A trial judge should grant a motion to dismiss where the pleadings indicate no facts can be proved which would entitle plaintiff to recover. (*Stutz v. Kamm* (1990), 204 Ill. App. 3d 898, 903, 562 N.E.2d 399, 402.) A strong presumption exists that a statute is constitutional. (*People v. Blackorby* (1992), 146 Ill. 2d 307, 318, 586 N.E.2d 1231, 1237.) Plaintiff's pleadings did not establish a violation of his constitutional rights. His complaint was properly dismissed.

Plaintiff had ample opportunity to avoid a vehicle registration suspension or have it rescinded by simply presenting proof of insurance

to the Secretary. His procedural due process rights were adequately protected by provisions allowing him to submit documentary evidence to determine whether he had liability insurance for his vehicle.

The extent of procedural protections is evaluated based on the standard outlined in *Mathews v. Eldridge* (1976), 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893. The following factors are relevant when considering whether administrative procedures governing a potential property deprivation provide adequate procedural safeguards: (1) the private interest affected by the government action; (2) the risk someone could be erroneously deprived of his or her interest because of the procedures employed; (3) the likely value of additional or different safeguards; and (4) the government's interest, including fiscal and administrative concerns which would be brought about by additional or different safeguards. *Mathews*, 424 U.S. at 334-35, 47 L. Ed. 2d at 33, 96 S. Ct. at 903.

Plaintiff's use of his vehicle is a protected property right under the due process clauses of the State and Federal Constitutions. (*Bell v. Burson* (1971), 402 U.S. 535, 539, 29 L. Ed. 2d 90, 94, 91 S. Ct. 1586, 1589; *People v. Lindner* (1989), 127 Ill. 2d 174, 179, 535 N.E.2d 829, 831.) He had a right to be heard at a meaningful time and in a meaningful manner regarding suspension of his vehicle registration. (*Mathews*, 424 U.S. at 333, 47 L. Ed. 2d at 32, 96 S. Ct. at 902.) However, he did not have to be provided a full-blown adversarial hearing merely because his property interest was affected.

He relies on *Goldberg v. Kelly* (1970), 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011, and *Memphis Light, Gas & Water Division v. Craft* (1978), 436 U.S. 1, 56 L. Ed. 2d 30, 98 S. Ct. 1554, in arguing he should have been provided an opportunity to appear in person, with or without an attorney, before the suspension became effective.

Both cases are distinguishable. In *Goldberg*, the Supreme Court concluded the procedures for terminating an individual's welfare benefits violated due process because a pretermination hearing was not provided. The Court noted the importance to the State and the recipient that benefits not be erroneously discontinued. *Goldberg*, 397 U.S. at 266, 25 L. Ed. 2d at 298, 90 S. Ct. at 1019-20.

Although use of a vehicle is an important property right, in plaintiff's case, the use was perhaps less significant than it could be for other individuals. In the letter he directed to the mandatory insurance division of the office of the Secretary, plaintiff indicated he "regularly [rode] a bicycle to work and [had] done so since moving to the State of Illinois in 1980."

Moreover, the absence of the use of a vehicle is not necessarily as severe a loss as the loss of all income or of a necessary utility. Other forms of transportation may be available, but loss of income or utility services cannot be easily substituted.

An additional distinguishing characteristic in this case is plaintiff and others similarly situated had at least 45 days from the date notification of the suspension was sent to them. During that time they had ample opportunity to send the proper verification to the Secretary and avoid suspension of their vehicle registration.

In *Goldberg* (397 U.S. at 268-69, 25 L. Ed. 2d at 299-300, 90 S. Ct. at 1021), however, the Court noted the opportunity to be heard in writing was an inappropriate option for many welfare recipients to provide evidence regarding why their benefits should not be terminated. Many recipients lacked effective writing skills and could not obtain professional assistance to provide the proper evidence.

The evidence required in this case was not as detailed as documentation required to disprove a welfare recipient's benefits should be discontinued. Plaintiff needed only to provide one of five simple forms of proof: his insurance card, a certificate of insurance, a policy declarations page, an insurance binder, or written proof from an insurance representative. In addition, plaintiff could have obtained the assistance of his insurance agent in providing this information.

In *Memphis Light, Gas & Water Division* (436 U.S. at 22, 56 L. Ed. 2d at 46-47, 98 S. Ct. at 1567), the Court concluded plaintiffs were not provided notice reasonably calculated to apprise them an administrative procedure was available to consider their complaint of erroneous billing and the company failed to provide plaintiffs an opportunity to present their complaint to an employee of the company.

Plaintiff and others similarly situated are provided ample notice a suspension will occur. They are provided at least 45 days' notice. They are also provided an opportunity to file a simple report with the Secretary's mandatory insurance division within the 45 days which can remedy any erroneous deprivation of their right to retain use of their properly registered and insured vehicle. This procedure adequately protects vehicle owners' due process rights.

Because we conclude the Code provides adequate opportunities for a vehicle owner to respond before his vehicle's registration is suspended, this opinion does not discuss additional cases plaintiff relied on in his brief as support for his argument a presuspension hearing must be provided before a vehicular registration is suspended.

IV. Conclusion

The trial judge did not err by dismissing plaintiff's complaint. Plaintiff lacked standing to challenge the constitutionality of the statute on self-incrimination grounds and his pleadings did not include sufficient allegations to raise any deficiencies of constitutional magnitude. Moreover, the Code provides adequate presuspension procedures to vehicle owners who receive notice their registration will be suspended; plaintiff simply failed to avail himself of them.

Affirmed.

STEIGMANN, P.J., and McCULLOUGH, J., concur.