BONIFACIO GUERRERO, Plaintiff-Appellant, v. GEORGE H. RYAN, Secretary of State, Defendant-Appellee.

First District (2nd Division)    No. 1—93—4047

Opinion filed May 23, 1995.

Joseph A. Longo, of Mt. Prospect, for appellant.

John P. Schmidt, Assistant Attorney General, of Chicago, for appellee.

JUSTICE DiVITO delivered the opinion of the court:

Plaintiff Bonifacio Guerrero brought this action seeking injunctive and declaratory relief for alleged constitutional violations committed by defendant George H. Ryan, Secretary of State of Illinois, regarding the suspension of plaintiff's driver's license pursuant to the Illinois Safety Responsibility Law (Safety Law) (Ill. Rev. Stat. 1987, ch. 95$^1$/$_2$, par. 7—100 (now 625 ILCS 5/7—100 *et seq.* (West 1992))). The circuit court granted the Secretary of State's motion for judgment on the pleadings. We affirm the judgment of the circuit court and find that plaintiff's constitutional due process and equal protection claims lack merit.

Plaintiff, then a recent immigrant from Mexico, was involved in an automobile accident with another vehicle on July 10, 1988. In Illinois, following an automobile accident involving injury or property damage in excess of $500, the Safety Law requires the Department of Transportation to certify to the Secretary of State whether security is required from any of the parties. If a party fails to furnish the Department of Transportation with evidence of insurance or an ability to pay for damages resulting from the accident, it forwards the

person's name to the Secretary of State for possible suspension of his driver's license. (Ill. Rev. Stat. 1987, ch. 95$^1$/$_2$, pars. 7—201, 7—201.2 (now 625 ILCS 5/7—201, 7—201.2 (West 1992)).) If the Secretary of State determines that there is a reasonable possibility that a civil judgment will be entered against that person, it notifies him by mail that his driver's license will be suspended unless he requests a hearing within 15 days of the notice's mailing or deposits the required security within 45 days. A requested hearing shall be scheduled within 45 days of the notice's mailing. (Ill. Rev. Stat. 1987, ch. 95$^1$/$_2$, par. 7—205(a) (now 625 ILCS 5/7—205(a) (West 1992)).) An individual will be released from the security deposit requirement, and any driver's license suspension will be rescinded, if: (1) the person is released from liability by the other driver; (2) a final adjudication finds the person not liable; (3) a judgment against the person is satisfied; (4) the security deposit is presented; (5) no action is filed within two years of the date of the accident; or (6) all claims arising from the accident have been discharged in bankruptcy. Ill. Rev. Stat. 1987, ch. 95$^1$/$_2$, par. 7—206 through 7—211 (now 625 ILCS 5/7—206 through 7—211 (West 1992)).

In his amended complaint, plaintiff alleged that he changed residences shortly after the accident and did not receive a notice of suspension. The notice, mailed to the address listed on plaintiff's driver's license on March 13, 1989, stated that his license would be suspended on April 28, 1989, if he did not post a surety bond or submit other proof of financial responsibility. The notice also stated that plaintiff could request an administrative hearing within 15 days of the date of the notice. As plaintiff did not request a hearing or satisfy the surety requirement, his license was suspended by default on April 28, 1989.

Plaintiff alleged that he first learned of the suspension in May 1990. On August 9, 1990, plaintiff's attorney requested a hearing from the Secretary of State to challenge the finding that there was a reasonable possibility of a judgment against plaintiff. Plaintiff's attorney also sought the reinstatement of plaintiff's driving privileges until the date of a hearing. Mary Roseberry, a Secretary of State administrator, responded in a letter dated September 5, 1990, that plaintiff had been properly notified of the impending suspension at the address listed on his driver's license and that it was plaintiff's responsibility to notify the Secretary of State of a change of address within 10 days of a move. (Ill. Rev. Stat. 1987, ch. 95$^1$/$_2$, par. 6—116 (now 625 ILCS 5/6—116 (West 1992)).) Nonetheless, the letter continued, a hearing would be scheduled, but the suspension would remain in force pending its outcome. On November 2, 1990, a hear-

ing officer found against plaintiff and denied plaintiff's request for a restricted driving permit (RDP) because the Safety Law did not provide for its issuance.

Count I of plaintiff's amended complaint alleged that his due process rights were violated because the notice of suspension was not sent by certified mail and he was not given a hearing within a reasonable time. Count II alleged that the denial of an RDP violated the equal protection clause of the United States Constitution. Plaintiff brought count II on behalf of a class of all persons whose licenses were suspended under the Safety Law and who had grounds for seeking an RDP.

## I

On appeal, plaintiff contends that, in suspending his driver's license, the Secretary of State violated his right to procedural due process. The State may not deprive an individual of life, liberty, or property without due process. (*Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 313, 94 L. Ed. 2d 865, 873, 70 S. Ct. 652, 656-57.) Driver's licenses are considered property, and due process requires the State to afford an individual notice and an opportunity for a hearing before a license may be suspended. *Bell v. Burson* (1971), 402 U.S. 535, 539, 542, 29 L. Ed. 2d 90, 94, 96, 91 S. Ct. 1586, 1589, 1591.[1]

## A

■ Plaintiff argues that he did not receive proper notice of his impending license suspension because due process requires the State to use certified mail before revoking one's driving privileges. The validity of a chosen method of communication is dependent on whether it is reasonably certain that those affected will be informed. (*Mullane*, 339 U.S. at 315, 94 L. Ed. 2d at 874, 70 S. Ct. at 657.) The form of notice provided should be likely to be received and plain to understand. (*Elmhurst Stamping & Manufacturing Co. v. Amax Plat-*

---

[1]Plaintiff contends that his due process arguments should be reviewed under a strict scrutiny standard because he has a fundamental right to due process. The question of whether an action will be reviewed under a strict scrutiny or a rational basis test pertains to substantive due process claims. Plaintiff's appeal raises only procedural due process arguments.

Additionally, under a substantive due process claim, strict scrutiny is applied if legislation impinges on a fundamental constitutional right. "The interest in a driver's license, while important, is not fundamental in the constitutional sense." *People v. Lindner* (1989), 127 Ill. 2d 174, 179, 535 N.E.2d 829.

*ing, Inc.* (1978), 67 Ill. App. 3d 257, 260, 384 N.E.2d 839.) In *Tulsa Professional Collection Services, Inc. v. Pope* (1988), 485 U.S. 478, 490, 99 L. Ed. 2d 565, 578, 108 S. Ct. 1340, 1347, the Supreme Court stated, "[w]e have repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice." Use of the mails has also been deemed adequate by Illinois courts. (*Elmhurst Stamping & Manufacturing Co.*, 67 Ill. App. 3d at 260 (regular mail is sufficient means of providing notice to creditors of the date for filing claims in proceeding to liquidate assets and business); *Village of Bensenville v. Botu, Inc.* (1976), 39 Ill. App. 3d 634, 637, 350 N.E.2d 239 (regular mail is sufficient means of providing notice of pending police action to abate a nuisance).) As statutorily mandated, the Secretary of State mailed the notice of suspension to plaintiff at the address listed on his driver's license. Considering that plaintiff was required to notify the Secretary of State of a change of address within 10 days of moving, it was reasonable for the Secretary to assume that a mailing to plaintiff's address according to its current listing would put plaintiff on notice of the proceedings against him.

Plaintiff cites several out-of-state cases to support his contention that section 7—205(a) violates due process by not providing for notice by certified or registered mail. (*McMullen v. Alger* (1954), 339 Mich. 175, 63 N.W.2d 599; *Williams v. Austin* (1972), 40 Mich. App. 12, 198 N.W.2d 770; *State v. Simmons* (Mun. Ct. 1960), 85 Ohio L. Abs. 1, 172 N.E.2d 194; *Simmons v. State* (Tex. Crim. App. 1969), 443 S.W.2d 852; *Hall v. Oregon State Department of Motor Vehicles* (1970), 2 Or. App. 248, 467 P.2d 975; *State v. Knittel* (N.D.S.D. 1981), 308 N.W.2d 379.) The holdings in the first five cases were dependent on their respective state statutes governing notice before a revocation of driving privileges could occur. The statutes in *McMullen,· Williams, State v. Simmons*, and *Simmons v. State* each required notice by registered or certified mail, and the statute in *Hall* provided that presumption of receipt of notice by regular mail could be rebutted. Section 7—205(a) (625 ILCS 5/7—205(a) (West 1992)) requires only that "the Secretary of State shall notify such person by mail," and it does not contain a rebuttal provision. The existence of state statutes with more stringent notification requirements does not imply that the procedures in Illinois are unconstitutional. As stated above, notice by regular mail is sufficient to satisfy the due process requirements of *Mullane.*

In *Knittel*, the North Dakota Supreme Court held that notice of an opportunity for a hearing on a driver's license suspension which is sent by regular mail is insufficient to guarantee due process when a statutory presumption of receipt of mail is rebutted. (*Knittel*, 308

N.W.2d at 384.) The North Dakota driver's license suspension statute deemed a suspension to have commenced when the notice of suspension was delivered. (*Knittel*, 308 N.W.2d at 383.) Under section 7—205, suspension occurs 45 days after mailing of the notice (if a hearing is not requested). No mention is made of delivery or receipt of the notice. The central question remains whether section 7—205 offers procedural due process protection to drivers who are unable to post security. We hold that notification by regular mail to the individual's last known address is reasonably calculated to provide actual notice.

## B

■ Next, plaintiff contends that he did not receive a timely hearing. The due process clause requires the opportunity for a hearing to be afforded before a suspension becomes effective. (*Bell*, 402 U.S. at 542, 29 L. Ed. 2d at 96, 91 S. Ct. at 1591.) The Safety Law affords an opportunity for a presuspension hearing by allowing an individual to contest a preliminary Secretary of State finding that an adverse civil judgment is likely to be entered against him. The rules and procedures of the Safety Law have been held to be sufficient to protect an uninsured motorist's due process right to an opportunity for a hearing (*Spaulding v. Howlett* (1978), 59 Ill. App. 3d 249, 253, 375 N.E.2d 437), and plaintiff does not allege that the Secretary of State failed to follow the prescribed procedures.

■ Plaintiff also contends that his due process rights were violated because, after requesting a post-suspension hearing in August 1990, he did not receive one until November 2, 1990, nearly three months later. *Bell* does not require the State to offer a post-suspension hearing, and plaintiff does not cite any authority for the proposition that one is constitutionally required. The State offered the post-suspension hearing on its own volition. While a delay in a post-termination hearing would become unconstitutional at some point, the due process clause does not require that post-termination hearings be held within a specific time frame. (*Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 547, 84 L. Ed. 2d 494, 507, 105 S. Ct. 1487, 1496 (an administrative proceeding lasting nine months was not unconstitutional *per se*).) A three-month span between the date of request and the date of hearing is not unconstitutional. Additionally, section 2—705(a)'s requirement that a hearing be scheduled within 45 days of the mailing of the notice of suspension applies to presuspension hearings only. Plaintiff's post-suspension hearing was not untimely.

## II

■ Plaintiff contends that his inability to obtain an RDP under the Safety Law violates his equal protection rights because similarly situated motorists whose driver's licenses are suspended for other, more dangerous automobile-related crimes such as drunk driving, reckless homicide, and drag racing are able to obtain RDPs under the Illinois Vehicle Code. (Ill. Rev. Stat. 1991, ch. 95½, par. 1—100 *et seq.* (now 625 ILCS 5/1—100 *et seq.* (West 1992)).) If a statute under assault in an equal protection claim infringes upon a fundamental right or operates to the disadvantage of a suspect class, it will receive strict scrutiny and be upheld only if it is necessary to achieve a compelling State interest. *Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 119-20, 412 N.E.2d 151.

Plaintiff argues that the Safety Law impinges on his fundamental right to travel. (*Shapiro v. Thompson* (1969), 394 U.S. 618, 635, 22 L. Ed. 2d 600, 615-16, 89 S. Ct. 1322, 1331-32.) In *Shapiro*, the Supreme Court applied strict scrutiny to state statutes, which denied welfare assistance to individuals who had not resided in the state for one year, because those laws interfered with the constitutional right to travel from state to state. (*Shapiro*, 394 U.S. at 634, 22 L. Ed. 2d at 615, 89 S. Ct. at 1331.) Courts have since found that the fundamental right to travel and reach a given destination does not imply a fundamental right to drive (*Maher v. State* (Ind. Ct. App. 1993), 612 N.E.2d 1063, 1065). "While continued use and possession of a driver's license is a substantial interest [citation], it is not a fundamental right." (*People v. Mourillon* (1984), 124 Ill. App. 3d 218, 221, 463 N.E.2d 1337.) Accordingly, the Safety Law's impact on the right to drive and the right to possess a driver's license is not an infringement on a fundamental right.

Additionally, no suspect class is involved. Plaintiff's brief repeatedly refers to wealth and the ability of the plaintiff class to acquire insurance and post security after an accident. Even if we were to find that the Safety Law makes classifications based on wealth, those classifications would not trigger strict scrutiny because poor persons are not considered a suspect class. *San Antonio Independent School District v. Rodriguez* (1973), 411 U.S. 1, 24-25, 36 L. Ed. 2d 16, 37-38, 93 S. Ct. 1278, 1291-92; *Van Meter*, 82 Ill. 2d at 120.

As no fundamental right or suspect class is involved, the Safety Law must bear a rational relationship to a legitimate governmental interest to be upheld. (*Van Meter*, 82 Ill. 2d at 120.) The Safety Law was enacted to ensure that victims of recent automobile accidents

are compensated by the party at fault (*Valentino v. Howlett* (7th Cir. 1976), 528 F.2d 975, 976 n.1), and future travelers on Illinois highways are protected from the prospect of being involved in an accident and not receiving just compensation for injuries they incur. (*Larkin v. Hartigan* (1993), 250 Ill. App. 3d 969, 976, 620 N.E.2d 598.) Plaintiff contends that the Safety Law, by denying RDPs to uninsured motorists who need a driver's license to maintain employment, actually makes it less likely that the injured motorist in a recent accident will receive compensation. While this may be true in certain circumstances, the State interest in protecting future potential victims is a legitimate objective and it is rationally related to the Safety Law. Accordingly, the Safety Law did not violate plaintiff's right to equal protection.

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

SCARIANO, P.J., and McCORMICK, J., concur.