SECOND DIVISION

DECEMBER 20, 2005

No. 1-04-2899

JOS༄༅ RICARDO NAJAS CORT༄༅S, ) Appeal from the 

) Circuit Court of

Petitioner-Appellant, ) Cook County.

)

    v. )

) No. 04 L 050672

ORION SECURITIES, INC., f/k/a )

as Yorkton Securities, Inc., ) The Honorable 

) Alexander P. White,

Respondent and Judgment ) Judge Presiding.

Debtor-Appellee. )

PRESIDING JUSTICE GARCIA delivered the opinion of the court.

On February 8, 1999, the plaintiff, Josེ Ricardo Najas Cortེs, obtained a judgment against the defendant Orion Securities, formerly known as Yorkton Securities, Inc. (Yorkton Canada), in the Eighth Civil Court of Pichincha, Ecuador.  On June 28, 2004, Najas registered the judgment with the circuit court of Cook County and sought its recognition and enforcement under the Uniform Foreign Money-Judgments Recognition Act (Recognition Act) (735 ILCS 5/12-618 
et
 
seq.
 (West 2004)).  

Yorkton Canada filed a motion to quash recognition of the judgment.  The trial court adopted Yorkton Canada's arguments and granted its motion to quash.  Najas appeals. 

BACKGROUND

In May 1997, Najas filed a lawsuit against Yorkton Canada in the Eighth Civil Court of Pichincha, Ecuador.  Najas alleged that Yorkton Canada failed to pay him millions of dollars for his services in connection with the exploration and development of certain mining properties in Ecuador in violation of Article 5 of the "Law Protecting Representatives, Agents or Distributors of Foreign Companies" (Agency Protection Act).
(footnote: 1)  In his complaint, Najas alleged that "Yorkton Securities, Inc. [was] duly represented by Doctor Jorge Eduardo Peྃafiel Revelo, in his capacity as Court-Appointed Attorney (Curator) as shown in the documents enclosed herewith."
(footnote: 2)  Prior to the initiation of the lawsuit and in response to a petition by Najas, the Tenth Civil Court of Pichincha, Ecuador, appointed Peྃafiel as Curator to represent Yorkton Canada's interests in the lawsuit filed by Najas.
(footnote: 3) 

In his complaint, Najas alleged that his business relationship began with Yorkton Canada in March 1993, when he was appointed its representative in Ecuador.  Najas negotiated the business agreement with Julia Aspillaga, general manager of Yorkton Canada's wholly owned subsidiary, Yorkton Securities, Inc. (Chile), Ltda. (Yorkton Chile), and who, according to Najas, is also a corporate officer for Yorkton Canada.   An agreement formalizing this relationship was signed on April 1, 1993, and provided in part:

"The following agreement between Yorkton Securities Inc. (Chile) Ltda. (YSI) signed on April 1st, 1993 in Santiago, Chile defines a working arrangement for a period of two years, renewable if the parties desire so for another period of two years."

The written agreement set out the respective duties and obligations of Najas and Yorkton Securities, Inc., with a provision that Aspillaga would inform "Yorkton Canada" of the transactions between the parties.  Najas alleged that although he acquired mining properties for Yorkton Canada, Yorkton did not pay him the commissions that he earned.

Najas did not serve Yorkton Canada or Yorkton Chile at the commencement of the lawsuit.  The only notice to Yorkton was in the form of a letter mailed by the Curator, on June 17, 1997, to Aspillaga at her office in Santiago, Chile.  Yorkton Canada contends that Yorkton Chile ceased doing business and closed its office in Santiago two years prior to the mailing of the Curator's letter to Aspillaga.

On February 8, 1999, the Ecuadorean court entered default judgment in favor of Najas.  During the proceedings, the Curator did not deny the accusations in the lawsuit or raise any defenses on Yorkton Canada's behalf.  The court found that the hearing was procedurally valid and that Najas was entitled to payment.  On April 20, 1999, the court entered a written order granting judgment in favor of Najas in the amount of $14,050,000.  On September 15, 1999, Yorkton Canada received notice of the default judgment through letters rogatory from the Curator at its Canadian address.
(footnote: 4)
 In February 2000, Najas filed an action to enforce the judgment in the supreme court of British Columbia, Canada.  The Canadian action is currently pending.  

On June 28, 2004, Najas registered the Ecuadorean judgment in the circuit court of Cook County and filed a petition for recognition of the judgment.  Matthew Tanner, Najas's attorney, filed an affidavit with the court indicating that Yorkton Canada operates a wholly owned business in Chicago.  On July 19, 2004, the judgment was registered.  

On August 9, 2004, Yorkton filed a motion to quash recognition of the judgment, arguing that it was not entitled to recognition and enforcement under the Recognition Act because: (1) the Ecuadorean court lacked personal jurisdiction over Yorkton Canada (735 ILCS 5/12-621(a)(2) (West 2004)); (2) Yorkton Canada did not receive notice of the lawsuit (735 ILCS 5/12-621(b)(1) (West 2004)); (3) the judgment was obtained by fraud (735 ILCS 5/12-621(b)(2) (West 2004)); and (4) the cause of action upon which the judgment was based violated Illinois public policy (735 ILCS 5/12-621(b)(3) (West 2004)).  Attached to Yorkton Canada's petition was the certification of Rodrigo Jijིཾn Letort, an Ecuadorean lawyer and legal scholar.  Jijིཾn stated that in his opinion, the Ecuadorean judgment was invalid because: (1) Najas failed to properly serve Yorkton Canada with the requisite letters rogatory, which are required before an Ecuadorean court can exercise jurisdiction over a foreign defendant; (2) the appointment of the Curator failed to comply with legal requirements and the Curator failed to protect Yorkton Canada's interests by providing the company notice of the lawsuit or a proper defense; and (3) the Agency Protection Act was not applicable to the transactions that formed the basis for Najas's claims. 

In Najas's response to Yorkton Canada's motion, Najas filed the affidavit of Dr. Patrick Barrera Sweeney, an Ecuadorean attorney and legal scholar, who opined that the judgment was valid and lawful because: (1) the Curator was properly appointed under the law; (2) Yorkton Canada was served legally and properly by the Curator; (3) Yorkton Canada failed to comply with its obligation under Ecuadorean law to maintain a representative in the country; and (4) the transactions that formed the basis for Najas's claims were properly subject to the Agency Protection Act. 

Both experts agree that once a curator is appointed, the curator's main duty is to notify the absent defendant of the proceedings against it.

On September 28, 2004, the trial court granted Yorkton Canada's motion to quash recognition of the judgment.  In doing so, the court adopted the arguments raised by Yorkton Canada.  This appeal followed.

ANALYSIS

Although Najas argues that the trial court erred in adopting in their entirety Yorkton Canada's arguments against recognition and enforcement of the Ecuadorian judgment, because we agree with Yorkton Canada that it did not receive reasonable notice of the underlying lawsuit and, consequently, that the trial court did not err in denying recognition of the judgment for that reason, we need not address or consider Najas's other arguments.  

I. Standard of Review

The parties disagree as to the standard this court should apply to review the trial court's findings that Yorkton Canada did not receive notice of the lawsuit.  Section 12-621(b)(1) of the Recognition Act provides that a "foreign judgment 
need
 
not
 
be
 
recognized
" if the defendant did not receive notice with sufficient time to defend. (Emphasis added.) 735 ILCS 5/12-621(b)(1) (West 2004).  Yorkton Canada contends that the statute vests the trial court with discretion in determining whether to recognize the judgment, and accordingly, this court must review that decision for an abuse of discretion.  Citing 
Buckner v. Causey
, 311 Ill. App. 3d 139, 150, 724 N.E.2d 95 (1999).

Najas argues that the decision of the trial court is not entitled to deference and this court must employ the 
de
 
novo
 standard of review.  Najas contends that pursuant to section 12-621(b), a trial court is entrusted with discretion only when the underlying legal predicates of that section have been established, 
e.g.
, a finding that the party did not receive notice.  Najas contends that the record presents no legal basis for such a finding.  He also argues that the trial court's adoption of Yorkton Canada's argument was "made in circumstances analogous to a grant of summary judgment" where the 
de
 
novo
 standard of review is applied and that a trial court abuses its discretion when it makes an error of law.  
See 
Koon v. United States
, 518 U.S. 81, 100, 135 L. Ed. 2d 392, 414, 116 S. Ct. 2035, 2047 (1996) (where the Supreme Court explained that "[l]ittle turns *** on whether we label review of this particular question abuse of discretion or 
de
 
novo
, for an abuse-of-discretion standard does not mean a mistake of law is beyond appellate correction").  

Under the facts present here, we see no practical distinction between the standards of review urged by the parties.  As the Supreme Court in 
Koon
 noted, "A [trial] court *** abuses its discretion when it makes an error of law. ***  The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions."  
Koon
, 518 U.S. at 100, 135 L. Ed. 2d at 414, 116 S. Ct. at 2047-48. 
 

Where the Recognition Act by its language vests the trial court with discretion in determining whether to recognize a foreign judgment, we review that decision for an abuse of discretion.  In the context of this case, where neither party requested an evidentiary hearing before the trial court, as both parties argued that there were no genuine issues of material fact and, accordingly, the trial court decided the issue of whether the Ecuadorean judgment was entitled to recognition under the Recognition Act based on counsel's arguments and the documentary evidence in the record, we review the trial court's findings "to determine that the discretion [exercised by the trial court] was not guided by erroneous legal conclusions."  
Koon
, 518 U.S. at 100, 135 L. Ed. 2d at 414, 116 S. Ct. at 2048
.  As we explain below, we find that the trial court did not err, or abuse its discretion, when it granted Yorkton Canada's motion to quash and denied recognition of the judgment pursuant to the Recognition Act.  The trial court committed no errors of law, as there is sufficient evidence in the record to support its finding that Yorkton did not receive reasonable notice of the underlying lawsuit. 

II. Notice 

Pursuant to the Recognition Act, a foreign judgment that is conclusive between the parties is enforceable "in the same manner as the judgment of a sister state which is entitled to full faith and credit."  735 ILCS 5/12-620 (West 2004).  
Pinnacle Arabians, Inc. v. Schmidt
, 274 Ill. App. 3d 504, 508, 654 N.E.2d 262 (1995).
  However, section 12-621(b)(1) of the Recognition Act provides that a "foreign judgment need not be recognized if *** the defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him or her to defend."  735 ILCS 5/12-621(b)(1) (West 2004).

"[A] foreign judgment cannot be enforced in a U.S. court unless it was obtained under a system with procedures compatible with the requirements of due process of law. [Citations.] Notice is an element of our notion of due process and the United States will not enforce a judgment obtained without the bare minimum requirements of notice. [Citation.]"  
International Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV
, 347 F.3d 589, 594 (5th Cir. 2003).
  "'[T]he polestar is whether a reasonable method of notification was employed and reasonable opportunity to be heard was afforded to the person affected.'" 
International Transactions
, 347 F.3d at 594, quoting 
Somportex, Ltd. v Philadelphia Chewing Gum Corp.
, 453 F.2d 435, 443 (3d Cir. 1971).

Yorkton Canada contends the trial court properly granted its motion to quash recognition of the judgment because it was never served through letters rogatory and received no notice of the action against it prior to judgment being entered.  The parties and their legal experts disagree as to whether letters rogatory were required under Ecuadorean law.

Najas contends, based on the affidavit of his expert, that Yorkton Canada was legally and properly served by the notice sent by the Curator, following his appointment by an Ecuadorian court.  The notice sent by the Curator was in the form of a letter to Aspillaga at Yorkton's Chilean office.  The letter read: 

"Messrs. Yorkton Securities Inc. this is to inform you that on 13 June 1997, under the prevailing Law, I have been appointed by the Judge of the Eighth Civil Court of Pichincha of Ecuador as Court Appointed Attorney for Yorkton Securities Inc. in the Oral Summary Hearing Docket No. 784-97-ENT filed against you by Mr. Josེ Ricardo Najas Cortེs in the Eight Civil Court of Pichincha, Ecuador.

I notify you for the pertinent legal actions required in this case."  

To determine whether Yorkton Canada received reasonable notice, we need not decide whether Ecuadorean law required that letters rogatory be sent or whether the Curator was properly appointed.  Our analysis is borne out of the Recognition Act's statutory scheme, not Ecuadorean jurisprudence.  This court is in no position to evaluate Ecuadorean law or to collaterally review the Ecuadorean court's determinations.  Instead, we need only determine whether Yorkton Canada received sufficient notice to satisfy due process as set forth in the Recognition Act.  

Due process requires that a defendant receive sufficient notice reasonably calculated to apprise him of the action and afford him the opportunity to be heard.  "In a proceeding where a person's right or interest in life, liberty, or property is affected, due process requires that the person be served with adequate notice, be apprised of a definite charge, and be afforded an opportunity to defend that interest in a fair and impartial hearing that is appropriate to the nature of the case."  
In re Abandonment of Wells located in Illinois by Eva Lovene Leavell
, 343 Ill. App. 3d 303, 305, 796 N.E.2d 623 (2003).
  Notice is a fundamental requirement of due process and must be reasonably calculated to apprise the defendant of the action and afford him the opportunity to be heard.  
Hwang v. Department of Public Aid
, 333 Ill. App. 3d 698, 707, 776 N.E.2d 801 (2002).  Although "useless formality in the giving of notice" is not required, the person whose rights are to be affected must be afforded notice that provides him a reasonable time to appear and defend his rights.  
El Sauz, Inc. v. Daley
, 328 Ill. App. 3d 508, 518, 765 N.E.2d 1052 (2002).  The United States Supreme Court explained:

"[W]hen notice is a person's due, process which is a mere gesture is not due process.  The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.  The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected *** or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes."  
Mullane v. Central Hanover Bank & Trust Co.
, 339 U.S. 306, 315, 94 L. Ed. 865, 874, 70 S. Ct. 652, 657-58 (1950).

Therefore, regardless of whether the Curator was properly appointed or whether Yorkton Canada was entitled to letters rogatory, the Recognition Act granted the trial court the discretion to refuse recognition of the judgment if the court found that Yorkton Canada did not receive sufficient notice to apprise it of the action or afford it the opportunity to defend.  See 735 ILCS 5/12-621(b)(1) (West 2004).

Najas contends "Yorkton was the subject of notice reasonably calculated to apprise it of the pendency of the suit, and thus personal jurisdiction existed."  As support for this claim, Najas asserts that Ecuadorian law required Yorkton "to maintain a legal representative in Ecuador."  Najas cites to 
Royal Business Funds Corp. v. South Eastern Development Corp.
, 32 N.C. App. 362, 369, 232 S.E.2d 215, 219 (1977) for the proposition that "where foreign corporation failed to maintain registered office and agent as required by State law, service on Secretary of State satisfied 
Mullane
's requirements and [satisfied the notice requirement for] personal jurisdiction."  Najas also cites to the comparable Illinois statute (805 ILCS 5/5.25) providing for service on the Illinois Secretary of State on behalf of a foreign corporation authorized to do business but no longer found within the state at the time a cause of action is filed. 

Najas further contends that "[e]ven accepting as true (which we do in the absence of evidence to the contrary) Yorkton's assertion that it had closed its Latin American office (in Chile) in 1995 (two years before notice was sent to that very office), this does not mean that the notice directed to that office was not 'reasonably calculated' to provide notice or was insufficient to confer jurisdiction."  Najas's support for this claim is a "see" cite to 
Guerrero v. Ryan
, 272 Ill. App. 3d 945, 949, 651 N.E.2d 586 (1995), where we held that notice by regular mail to a drivers license holder to the address provided by him to the Secretary of State was sufficient notice to satisfy the minimum constitutional procedural due process requirements.  Based on that authority, Najas leaps to his claim that regular mail notice from the court-appointed lawyer in Ecuador to Yorkton's office in Chile was "reasonably calculated to provide actual notice" under our constitutional standards.  We disagree.

Najas's argument is premised on his claim that Ecuadorian law required Yorkton "to maintain a legal representative in Ecuador."  While we accept that claim as true for purposes of our decision, we are not presented with any explanation how this duty to maintain a representative in Ecuador somehow translates into a duty to maintain an address to receive legal notice in Chile so as to provide a basis to conclude that regular mail sent to that office (even two years after it closed) was nonetheless "reasonably calculated to provide actual notice."  

Although, the United States Supreme Court and Illinois courts have held that "'mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice'" (
Guerrero v. Ryan
, 272 Ill. App. 3d 945, 949, 651 N.E.2d 586 (1995), quoting 
Tulsa Professional Collection Services, Inc. v. Pope
, 485 U.S. 478, 490, 99 L. Ed. 2d 565, 578, 108 S. Ct. 1340, 1347 (1988)), we find that
 based on the evidence in the record, mail service to Aspillaga at the Chilean address was not reasonably calculated to provide actual notice to Yorkton Canada. 

Najas's argument that the Curator's letter directed to Aspillaga is analogous, or comparable, to service through the Secretary of State for a foreign corporation is not convincing.  In Illinois, section 5.25 of the Business Corporation Act of 1983 (805 ILCS 5/5.25 (West 2002)) provides that a foreign corporation may be served either upon the registered agent appointed by the corporation or upon the Secretary of State.  Further, "[t]he Secretary of State shall be irrevocably appointed as an agent of a *** foreign corporation having authority upon whom any process, notice or demand may be served: (1) Whenever the corporation shall fail to 
appoint or maintain a registered agent in this State
 ***."  (Emphasis added.) 805 ILCS 5/5.25(b)(1) (West 2002)  This service, however, must be accomplished within the jurisdictional borders of the State of Illinois.  Najas's argument that Yorkton's failure to maintain a representative in Ecuador somehow permitted it to serve Aspillaga, a purported representative, in a foreign country, reaches far beyond what is allowed under the Illinois statute or comparable statutes throughout the United States.  For this type of notice to satisfy due process, service must be made as provided by the controlling statute within the jurisdiction where the foreign company is authorized to conduct business.  See 
Washington el rel. Bond & Goodwin & Tucker v. Superior Court
, 289 U.S. 361, 364, 77 L. Ed. 1256, 1259, 53 S. Ct. 624, 626, (1933) (where the Supreme Court held that service upon the Secretary of State office for the State of Washington without actual notice to the foreign company did not violate the company's right to due process because "[a]dmission [of a foreign corporation to do business in a State] might be conditioned *** upon the terms that if the corporation had failed to appoint or maintain an agent service should be made upon a state officer").  Najas, in essence, asks this court to ignore jurisdictional boundaries.  In addition, Najas asks us to assume that Chilean law requires a corporation, which once maintained an office in that country, to maintain a representative even after the corporation closes its doors.  As we refused to delve into Ecuadorean law, we also refuse to make assumptions about Chilean law.

Our conclusion that notice to the office in Chile did not provide notice "reasonably calculated" to reach the intended party is further grounded on Najas's own complaint directed not at Yorkton Chile, but at Yorkton Canada.  Before filing his lawsuit, Najas regularly corresponded with Yorkton at its Canadian address, as evidenced by the record.  The record also indicates that both Najas and the Curator were aware of Yorkton's address in Canada.  Under these circumstances, mail service to Aspillaga at the Chilean address, which had been closed for two years, did not satisfy the due process requirements of notice because the form chosen was "substantially less likely to bring home notice than other of the feasible and customary substitutes."  
Mullane
, 339 U.S. at 315, 94 L. Ed. at 874, 70 S. Ct. at 658. 

Further, even if we were to conclude that regular mail service was procedurally sufficient, we find that the contents of the letter did not sufficiently appraise Yorkton Canada of the action against it.  The Curator's letter provided only: (1) the date the Curator was appointed in the proceedings; (2) the docket number; (3) the name of the plaintiff; and (4) the name of the court.  The letter did not contain the complaint or summons and did not afford Yorkton Canada sufficient notice that provided it a reasonable time to appear and defend its rights.  See 
El Sauz
, 328 Ill. App. 3d at 518; 
Julen v. Larson
, 25 Cal. App. 3d 325, 328, 101 Cal. Rptr. 796, 798 (1972) (explaining 
that although service of process by mail in a foreign country is not automatically objectionable, "the process served must give defendant sufficient notice of the pending foreign proceedings to satisfy the requirements of due process of law" such that it is reasonably calculated to impart knowledge of an impending action)
.

CONCLUSION

For the reasons stated, we find that the trial court did not abuse its discretion in granting Yorkton Canada's motion to quash recognition based on Yorkton Canada's lack of notice.  We make no findings concerning the other arguments, 
i.e.
, personal jurisdiction, fraud, and public policy, raised in the motion to quash.  

Affirmed.

SOUTH and HALL, JJ., concur.   

FOOTNOTES
1: The parties disagree as to the precise translation of the Act. 

2:  Many of the documents in the record have been translated from Spanish to English.  When quoting from the documents, we have generally chosen not to correct grammatical errors in the translations.

3: The date of the appointment and the documents related thereto are not part of the record. 

4:
"A letter rogatory is a formal request from a court in one country to the appropriate judicial authorities in another country that can effectuate service of process."  
Magness v. Russian Federation
, 247 F.3d 609, 614 n.10 (5th Cir. 2001).