In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 22-1199
YANCHENG SHANDA YUANFENG EQUITY INVESTMENT
PARTNERSHIP, a Limited Partnership Organized Under the
Laws of China,
 Plaintiff-Appellee,

 v.

KEVIN WAN,
 Defendant-Appellant.
 ____________________

 Appeal from the United States District Court for the
 Central District of Illinois.
 No. 2:20-cv-02198 — Colin S. Bruce, Judge.
 ____________________

 ARGUED SEPTEMBER 23, 2022 — DECIDED JANUARY 31, 2023
 ____________________

 Before ROVNER, RIPPLE, and BRENNAN, Circuit Judges.
 RIPPLE, Circuit Judge. In May 2019, Yancheng Shanda Yu-
anfeng Equity Investment Partnership (“Yancheng Shanda”)
filed a contract claim in a Chinese court against Kevin Wan,
his company, and his brother. The Chinese court entered a de-
fault judgment against Mr. Wan after he failed to appear. In
July 2020, Yancheng Shanda filed a complaint in the United
2 No. 22-1199

States District Court for the Central District of Illinois, seeking
enforcement of the Chinese judgment under the Illinois for-
eign judgment recognition law. In that complaint, it predi-
cated subject matter jurisdiction on diversity of citizenship.
 The district court, determining that the Chinese judgment
was enforceable under Illinois law, granted Yancheng
Shanda’s motion for summary judgment. Mr. Wan now ap-
peals the judgment of the district court. Because the factual
predicates for the district court’s jurisdiction are not estab-
lished firmly in the existing record, we vacate the judgment
of the district court and remand the case for further proceed-
ings consistent with this opinion.
 I
 BACKGROUND
 A.
 The Underlying Litigation
 The underlying litigation is a contract dispute between
Yancheng Shanda and Mr. Kevin Wan. According to Yan-
cheng Shanda’s allegations in the Chinese court, it had en-
tered into an agreement with Mr. Wan under which Mr. Wan
would repurchase shares of his company from Yancheng
Shanda. In the following paragraphs, we set forth the back-
ground as it appears in the record before us.
 Yancheng Shanda is a partnership based in Yancheng
Shanda City, Jiangsu Province, People’s Republic of China.
Mr. Wan is a United States citizen and the founder, owner,
and chief executive officer of Zmodo Technology Shenzhen
Corp., Ltd. (“Shenzhen Zmodo”), a Chinese company and
global provider of security cameras.
No. 22-1199 3

 Beginning around 2013, Shenzhen Zmodo, Mr. Wan, and
Mr. Wan’s brother and business partner, Keija Wan, who also
worked at Shenzhen Zmodo, occupied office 25F at the Finan-
cial Technology Building in Shenzhen City. Between 2015 and
2019, Mr. Wan traveled to China almost every month for busi-
ness. Around early 2019, Shenzhen Zmodo moved to a
smaller office space within the Financial Technology Build-
ing, and Mr. Wan ceased to maintain a personal office within
Shenzhen Zmodo’s space there. In June 2019, Mr. Wan trav-
eled to the United States for business reasons; he claims that
he has not been able to return to China since then due to the
pandemic. Mr. Wan did not inform anyone of a change of ad-
dress or provide a forwarding address when he last departed
China.
 In May 2019, shortly before Mr. Wan’s departure for the
United States, Yancheng Shanda commenced the underlying
action in Chinese court against Mr. Wan, Keija Wan, and
Zmodo (Jiangsu) Digital Technology Co., Ltd. (“Jiangsu
 1
Zmodo”), a subsidiary of Shenzhen Zmodo, for breach of the
share repurchase agreement. On July 9, 2019, the court mailed
a summons and complaint to Mr. Wan at office 25F at the Fi-
nancial Technology Building, the address listed on the par-
ties’ agreement. The court also mailed copies to Keija Wan at
the same address. Although by this time Shenzhen Zmodo
had moved to a new office within the Financial Technology
Building, the package containing the notice of the lawsuit was

1 Yancheng Shanda notes that, contrary to the assertion in Mr. Wan’s
opening brief, see Appellant’s Br. 34, Shenzhen Zmodo was not sued in the
Chinese action. Appellee’s Br. 5–6, 5 n.2; see R.22-1 at 33. In his reply brief,
see Reply Br. 21 n.6, Mr. Wan concedes the error and withdraws the argu-
ment that was based on that error.
4 No. 22-1199

signed for at the building, and Keija Wan received the notice.
Jiangsu Zmodo, located in a different city and region, also re-
ceived the court’s summons at its office address.
 Both Keija Wan and Jiangsu Zmodo appeared in the Chi-
nese court proceedings. Mr. Wan did not make an appear-
ance, and the court deemed him to have waived his right to
respond. Accordingly, the court entered judgment against
him and found him and Keija Wan jointly and severally liable.
 In the present action to enforce the Chinese court’s judg-
ment, Mr. Wan maintains that he did not receive the sum-
mons mailed by the Chinese court or any other physical mail
regarding the Chinese suit. He claims that he had no notice of
the underlying action until August 3, 2020, when he received
notice of the present attempt to enforce the judgment.
 B.
 District Court Proceedings
 1.
 Having received a default judgment against Mr. Wan in
the Chinese proceedings, Yancheng Shanda filed a complaint
in the Central District of Illinois on July 13, 2020. It sought
recognition and enforcement of the Chinese court’s judgment
against Mr. Wan under Illinois’s Uniform Foreign-Country
Money Judgments Recognition Act (“Recognition Act”), 735
ILCS 5/12-661 et seq. Invoking the district court’s diversity ju-
risdiction, Yancheng Shanda alleged that it was “a limited
partnership organized under the laws of China” and therefore
 2
was “a citizen of a foreign state.”

2 R.1 at 2.
No. 22-1199 5

 The next day, the district court ordered Yancheng Shanda
 3
to make “adequate jurisdictional allegations.” The court ex-
plained that a partnership has the citizenship of all the part-
ners and that, because Yancheng Shanda did not list its part-
ners and their citizenships, its allegations were “insufficient
 4
to adequately establish diversity jurisdiction.” Yancheng
Shanda then filed an amended complaint with an attachment
alleging the Chinese citizenship of each of its four partners.
Specifically, Yancheng Shanda alleged that each of its part-
ners was a limited liability company (“LLC”) “organized un-
der the laws of China and with its principal place of business
 5
in China.” Of particular relevance here, Yancheng Shanda al-
leged that one partner, Jiangsu Zhonghan Yancheng Indus-
trial Park Investment Co., Ltd. (“Jiangsu Zhonghan”), was a
Chinese LLC owned by six Chinese state or state-owned enti-
ties, each of which was “a foreign state as defined in 28 U.S.C.
 6
§ 1603(a).”
 2.
 On September 23, 2020, Mr. Wan filed a Rule 12(b)(6) mo-
tion to dismiss. In his motion, Mr. Wan pointed out that, un-
der the Recognition Act, a court may decline to recognize and
enforce a judgment when the “defendant in the proceeding in
the foreign court did not receive notice of the proceeding in

3 R.2 at 2.

4 Id. at 1.

5 R.3-4 at 1–2.

6 Id. at 2–3. The allegation is attached as an exhibit to the amended com-
plaint, but it does not purport to be a declaration or affidavit.
6 No. 22-1199

 7
sufficient time to enable the defendant to defend.” This pro-
vision was applicable, argued Mr. Wan, because he had no
notice of the Chinese proceedings. Specifically, he submitted
that there were “no allegations regarding how, when, or
where he was ‘summoned’” and there was “no notice that
would have afforded [him], or any defendant, ‘reasonable
 8
time to appear and defend his rights.’”
 Responding to the motion, Yancheng Shanda submitted
that it was reasonable to infer from the allegations of the com-
plaint that Mr. Wan had notice of the underlying lawsuit and
that service of the summons at Mr. Wan’s office, which was
the same address that Mr. Wan used in the underlying con-
tractual agreements, constituted sufficient notice of the com-
plaint. Noting that Mr. Wan bore the burden of establishing
lack of notice, Yancheng Shanda maintained that it was not
plausible for Mr. Wan to claim that he did not know of the
underlying lawsuit. In any case, continued Yancheng Shanda,
disagreement on whether there had been adequate notice
made a Rule 12(b)(6) dismissal inappropriate.
 The district court denied the motion to dismiss. It charac-
terized Mr. Wan’s argument as a claim that, because he was
not served in the Chinese action, he had been deprived of due
process. Relying on our decision in Ma v. Continental Bank,
N.A., 905 F.2d 1073 (7th Cir. 1990), the district court identified
the standard for adequate service as “whether the plaintiff

7 R.9 at 3–4 (quoting 735 ILCS 5/12-664(c)(1)).

8 Id. at 4–5 (quoting Najas Cortés v. Orion Sec., Inc., 842 N.E.2d 162, 168 (Ill.
App. Ct. 2005)). The motion to dismiss also raised other arguments that
were not presented on appeal.
No. 22-1199 7

use[d] a method reasonably calculated to produce actual no-
 9
tice.” The court then determined that the questions of service
and notice presented “a fact-intensive inquiry that will be bet-
ter suited for summary judgment” and, accordingly, denied
 10
Mr. Wan’s motion to dismiss.
 3.
 Yancheng Shanda later moved for summary judgment. It
submitted that, “based on the undisputed facts, the method
of service was reasonably calculated to produce actual no-
 11
tice.” Yancheng Shanda maintained that the district court
had articulated correctly the key issue as whether a method
of service employed was reasonably calculated to apprise
Mr. Wan of the pendency of the action and was based on
“constitutional notions of due process as set forth in the
 12
Recognition Act.” Actual notice, continued Yancheng
Shanda, was not required; “an adequate attempt to provide
 13
actual notice” sufficed. Because Mr. Wan “did not tell Yan-
cheng Shanda he was moving permanently to the United
States,” service “delivered by the Court in China to what was
reasonably believed to be [Mr. Wan’s] current address …

9 R.13 at 9–10 (quoting Ma v. Cont’l Bank, N.A., 905 F.2d 1073, 1076 (7th
Cir. 1990)).
10 Id. at 10–11.

11 R.22 at 10.

12 Id. at 10–11.

13 Id. at 11.
8 No. 22-1199

more than satisfie[d] the requirements of notice under the
 14
Act.”
 Responding to the summary judgment motion, Mr. Wan
submitted that there was indeed a disputed issue of material
fact. In his view, construing the facts in the light most favora-
ble to him as the nonmoving party, the record reflected that
he had not received notice of the Chinese lawsuit and there-
fore was not able to defend himself in those proceedings.
Mr. Wan submitted that the method of service employed
 15
“was not reasonably calculated to provide actual notice.” He
further submitted that the “conditions in this case did not per-
mit physical mail to be a reasonably certain method for
providing actual notice” and that “customary substitutes”
such as “emails, text messages, or electronic chats” would
 16
have been more appropriate. Mr. Wan urged that Ma should
not control because, even though we determined there that
“mail service to the last known address was appropriate,” the
 17
party in that case had actual notice of the proceedings.
 The district court granted summary judgment for Yan-
cheng Shanda. The court held that actual notice was not re-
quired and that the correct standard was “whether the plain-
tiff used a method reasonably calculated to produce actual

14 Id. at 12.

15 R.23 at 7.

16 Id. at 9.

17 Id. at 9–10.
No. 22-1199 9

 18
notice.” Relying on Ma, the district court stated that process
mailed to a defendant at his residence is sufficient. The court
then noted that it was undisputed that Mr. Wan was the CEO
of Shenzhen Zmodo, that he maintained an office at 25F in the
Financial Technology Building until at least early 2019, and
that the 25F office address was listed on the share repurchase
agreement. The court further noted that Keija Wan had re-
ceived a copy of the summons that was mailed to office 25F
and that Mr. Wan never had informed anyone that he was
changing locations. Given these undisputed facts, the court
held that “the service of process effected for the Chinese law-
suit was reasonably calculated to produce notice” to Mr. Wan
 19
and that the Chinese judgment should be enforced. The dis-
trict court therefore granted Yancheng Shanda’s motion for
summary judgment and entered judgment against Mr. Wan
in the amount of $20,169,843.81.
 II
 DISCUSSION
 This case presents several knots on the question of subject
matter jurisdiction that we must untangle.
 In the district court, subject matter jurisdiction was not
raised initially by the parties. Rather, upon its initial exami-
nation of the complaint immediately after filing, the court
raised the issue sua sponte. Mindful of its obligation to ensure
that subject matter jurisdiction was present, see Smith v. Am.
Gen. Life & Accident Ins. Co., Inc., 337 F.3d 888, 892 (7th Cir.

18 R.27 at 9 (citing Ma, 905 F.2d at 1076).

19 Id. at 12.
10 No. 22-1199

2003), the court issued a rule to show cause as to why the case
ought not be dismissed for lack of jurisdiction. In that order,
the court explicitly invited Yancheng Shanda’s attention to
the established rule that, for purposes of the statute conferring
diversity jurisdiction on the district court, 28 U.S.C. § 1332, the
citizenship of all partners in a limited partnership must be
taken into consideration. See Elston Inv., Ltd. v. David Altman
Leasing Corp., 731 F.2d 436, 439 (7th Cir. 1984). After consider-
ing Yancheng Shanda’s amended jurisdictional allegations,
the court ruled that it had jurisdiction. Although the court
was under a continuing obligation to evaluate any develop-
ment throughout the litigation that might call into question
its earlier determination, it was not obligated, absent addi-
tional information, to return to the issue.
 Our obligation on subject matter jurisdiction is identical to
that of the district court: We review de novo subject matter
jurisdiction determinations, Dexia Credit Loc. v. Rogan, 629
F.3d 612, 619 (7th Cir. 2010), and we have an independent ob-
ligation to satisfy ourselves that jurisdiction is secure, Carroll
v. Stryker Corp., 658 F.3d 675, 680 (7th Cir. 2011); see Henderson
ex rel. Henderson v. Shinseki, 562 U.S. 428, 434 (2011).
 The information before the district court was inadequate
to establish subject matter jurisdiction. Yancheng Shanda,
which had the burden on this issue, failed to present “compe-
tent proof” of its citizenship. Hertz Corp. v. Friend, 559 U.S. 77,
96–97 (2010). Yancheng Shanda did not present any evidence
establishing its citizenship or the citizenship of its several
partners. It submitted a declaration by its employee Mei Hu
who stated simply that Yancheng Shanda “is and was domi-
ciled in Yancheng City, Jiangsu Province, People’s Republic
No. 22-1199 11

 20
of China.” However, a partnership does not have a “domi-
cile” for purposes of diversity jurisdiction. Rather, to establish
subject matter jurisdiction based on diversity of citizenship,
the citizenship of each partner must be established. See Elston
Inv., 731 F.2d at 439. There was no evidence in the district
court record establishing the citizenship of each of Yancheng
Shanda’s four Chinese LLC partners. As a result, there is no
evidence to support a finding of complete diversity.
 In this appeal, Yancheng Shanda presents a new declara-
tion of employee Mei Hu. This declaration states that each of
Yancheng Shanda’s partners “is a citizen of China” and fur-
ther details characteristics of each partner’s business struc-
tures in an effort to establish that, as a matter of federal juris-
dictional law, Yancheng Shanda’s partners are corporations
and thus are considered citizens of their place of incorpora-
 21
tion and principal place of business. Although United States
LLCs are treated as partnerships for purposes of assessing di-
versity of citizenship, Yancheng Shanda submits that, based
on our decision in BouMatic, LLC v. Idento Operations, BV, 759
F.3d 790 (7th Cir. 2014), Chinese LLCs should be treated as
corporations for purposes of § 1332. In BouMatic, we identi-
fied factors for determining whether a foreign business entity
is a “corporation” for diversity purposes, including whether
the company has personhood, limited liability for sharehold-
ers, and shares that can be bought and sold subject to re-
strictions declared by the business. Id. at 791. The Mei Hu

20 R.22-1 at 4.

21 Appellee’s Br. Add. 2.
12 No. 22-1199

declaration states, albeit in summary fashion, that Chinese
LLCs have these characteristics.
 In Sarnoff v. American Home Products Corp., we noted that
we “can do two things besides dismissing” when we notice a
jurisdictional problem on appeal. 798 F.2d 1075, 1079 (7th Cir.
1986), abrogated on other grounds by Hart v. Schering-Plough
Corp., 253 F.3d 272 (7th Cir. 2001). First, if the problem can be
easily resolved by affidavit, we can allow the parties to sup-
plement the record. Id. Alternatively, if there is greater factual
uncertainty, we can remand the case to give the parties an op-
portunity to introduce evidence in the district court and ob-
tain a jurisdictional finding by the district judge. Id.
 There are situations where the first course is entirely ap-
propriate. But such an approach should be employed only
when the path is a straightforward one. “Classification of a
foreign business entity can be difficult because other nations
may use subsets of the characteristics that distinguish corpo-
rations from other business entities in the United States.” Bou-
Matic, 759 F.3d at 791 (citation omitted). In the case of Chinese
business entities, however, we already have indicated that
significant care needs to be taken in determining the precise
characteristics of the organization in question. See Fellowes,
Inc. v. Changzhou Xinrui Fellowes Off. Equip. Co. Ltd., 759 F.3d
787 (7th Cir. 2014). Accordingly, in the present case, we vacate
the district court’s judgment and remand the case so that the
district court may explore in more depth the nature of the Chi-
nese businesses in question and determine whether the re-
quirements of diversity jurisdiction have been fulfilled. The
district court is in a better position than this court to give the
parties a plenary and even-handed opportunity to present ev-
idence on the nature of these entities.
No. 22-1199 13

 On remand, the district court must first address whether
Yancheng Shanda’s partners can be characterized as corpora-
tions and, if so, the jurisdiction of their incorporation and of
their principal place of doing business. If the district court de-
termines that these entities do not qualify as corporations un-
der the diversity statute, the court must treat them as partner-
ships. Because partnerships take the citizenship of each of
their partners, the court must identify each partner’s citizen-
ship.
 Finally, the district court must address particular ques-
tions about one of the partners, Jiangsu Zhonghan, and its six
 22
state or state-owned entity owners. If this entity is directly
and majority-owned by a “foreign state or political subdivi-
sion thereof,” it is itself a “foreign state” for purposes of fed-
eral jurisdiction. 28 U.S.C. §§ 1332(a)(4), 1603(a), (b)(2); Dole
Food Co. v. Patrickson, 538 U.S. 468, 473–77 (2003). In its
amended complaint, Yancheng Shanda alleged that Jiangsu
Zhonghan is owned by six Chinese state or state-owned enti-
ties, but the record contains no evidence of the breakdown of
their ownership interests. A finding that Jiangsu Zhonghan (if
it is treated as a corporation) or one of its owners (if it is in-
stead treated as a partnership) is a “foreign state” would re-
quire confronting Mr. Wan’s argument that Yancheng
Shanda—being a partnership whose partners include both

22 The exact shape of this inquiry will depend upon whether the district
court determines that Jiangsu Zhonghan, as a Chinese LLC, should be
treated as a corporation or a partnership under § 1332. If it is a corporation,
then the district court should evaluate Jiangsu Zhonghan itself for poten-
tial status as a “foreign state” under §§ 1332(a)(4) and 1603(a). If, instead,
it is a partnership, the district court will need to evaluate each of Jiangsu
Zhonghan’s partners.
14 No. 22-1199

“citizens” of a foreign state and a “foreign state”—cannot in-
voke diversity jurisdiction because no provision of § 1332 ex-
plicitly applies to such a “hybrid” entity. But see Ruggiero v.
Compania Peruana de Vapores Inca Capac Yupanqui, 639 F.2d 872,
875–77 (2d Cir. 1981). The district court should require the
parties to address the specific nature of each of the component
entities in Jiangsu Zhonghan and determine whether Jiangsu
Zhonghan or the relevant component entity is directly and
majority-owned by a “foreign state or political subdivision
thereof.” In light of these findings, it should then evaluate
 23
Mr. Wan’s arguments concerning the applicability of § 1332.
 CONCLUSION
 Accordingly, the judgment of the district court is vacated,
and the case is remanded for further proceedings consistent
with this opinion. The parties will bear their own costs in this
appeal.

 VACATED and REMANDED. No Costs Awarded.

23 We defer addressing Mr. Wan’s argument on the question of notice un-
der the Recognition Act until the question of subject matter jurisdiction is
resolved.